**STATE of Missouri, Respondent,**

v.

**David E. JONES, Appellant.**

**No. ED 97956.**

Missouri Court of Appeals,
Eastern District,
Division Four.

Feb. 13, 2013.

Motion for Rehearing and/or Transfer to Supreme Court Denied Apr. 22, 2013.

Application for Transfer Denied May 28, 2013.

ders the representation ineffective. *Webb*, 334 S.W.3d at 131 n. 8.

KURT S. ODENWALD, Judge.

*Introduction*

The appellant, David Jones ("Jones"), appeals from the judgment entered upon a jury verdict finding Jones guilty of first-degree assault, Section 565.050,[1] and armed criminal action, Section 571.015. Jones asserts two points of error on appeal. First, Jones argues that the trial court erred in prohibiting him from arguing to the jury during his closing argument that his "liberty" was at stake. Second, Jones contends that the trial court erred in admitting the full transcript of his interrogation, including statements by the interrogating police officer questioning his version of facts surrounding the physical

altercation at issue. Finding no prejudicial error, we affirm the judgment of the trial court.

*Factual and Procedural History*

Viewed in the light most favorable to the verdict, the evidence produced at trial is as follows. During October 2010, property owned by Virgie Woods ("Woods") was burglarized. On November 4, 2010, Woods was performing yard work at the same property and asked a passerby for some help with the yard work. The individual suggested Woods ask Jones for help. Woods discussed the work with Jones, which included general yard work and repair of a basement door damaged during the burglary. Woods brought Jones inside the basement to show him the damage and discuss the repair.

Once in the basement, Jones became visibly agitated. Woods asked Jones whether he knew, or had heard, anything about the burglary. Jones denied any knowledge or participation in the burglary. Jones then began to curse and physically attack Woods. Jones repeatedly slashed Woods with a box cutter until Woods was able to fight Jones off. Woods briefly chased after Jones, but eventually gave up the chase due to his injuries. Woods reported the incident to police and Jones was later arrested.

On December 14, 2010, after being read his *Miranda* rights, Jones was interrogated by Officer Scott Paiva ("Officer Paiva") about the altercation. Jones claimed that Woods was the initial aggressor and, with the help of an unknown third party, struck Jones repeatedly with the butt of a pistol. Jones admitted to struggling, and possibly accidentally cutting Woods with a knife, but argued that his actions were in self-defense. Jones also claimed that Woods

---

1. All statutory references are to RSMo. (2010).

had seriously wounded him during the exchange. Officer Paiva observed that Jones had no apparent injuries as a result of the altercation, and opined to Jones that the injuries Jones described likely would not have healed to the point of being undetectable given the duration of only five weeks between the altercation and the interrogation. Jones said his wounds had healed completely because he used a homemade salve consisting of witch hazel and antiseptics. Officer Paiva also asked Jones why he did not file a police report given Jones's assertion that Woods had assaulted him.

The State charged Jones with, *inter alia*, first-degree assault and armed criminal action. Prior to trial, Jones moved that the trial court redact from his statement the portions of Officer Paiva's interrogation in which Officer Paiva expressed his opinions of medical facts and of the propensity of individuals who act in self-defense to notify police of the assault which gave rise to the acts of self-defense. The trial court denied Jones's motion on grounds that Officer Paiva's statements were not improper opinion evidence introduced to establish those facts, but were merely part of the give-and-take of questioning a suspect during an interrogation.

At trial, State offered into evidence the full transcript of the interrogation, over Jones's renewed objection. Both Jones and Woods testified as to their different versions of the physical altercation. Prior to closing argument, the trial court granted a motion in limine by State prohibiting Jones from mentioning during his closing argument that Jones's "liberty" was at stake. A jury returned a verdict finding Jones guilty of first-degree assault and armed criminal action, and the trial court entered a judgment accordingly. This appeal follows.

## Points on Appeal

In his first point on appeal, Jones argues that the trial court committed prejudicial error in prohibiting him from arguing to the jury during his closing argument that the jury's decision would affect his liberty.

In his second point on appeal, Jones argues that the trial court erred in admitting Jones's full statement made during the police interrogation, which included comments that Officer Paiva was skeptical that the altercation occurred as Jones described because Jones did not have visible scars or injuries and did not notify the police of the assault against him.

## Standards of Review

We review a trial court's judgment regulating the content of closing argument for an abuse of the trial court's discretion. *State v. Tramble*, 383 S.W.3d 34, 37 (Mo. App. E.D.2012) (internal citation omitted). Even if we find the presence of error, we will not reverse the trial court's judgment unless we find the error prejudiced the defendant in such a manner that a reasonable probability exists that the error affected the outcome at trial. *Id.*

We also review the admission of evidence for an abuse of the trial court's discretion. *State v. Forrest*, 183 S.W.3d 218, 223 (Mo. banc 2006). We will affirm the trial court's judgment unless the trial court's ruling is clearly against the logic of the circumstances, indicates a lack of careful consideration, and the error was so prejudicial so as to deprive the defendant of a fair trial. *Id.*

## Discussion

**I. The trial court did not commit prejudicial error in limiting closing argument.**

■ Jones's first point on appeal addresses the trial court's refusal to allow

Jones to tell the jury during closing argument that the jury's decision would affect his liberty. The State argues that Jones was properly precluded from arguing that his "liberty" was at issue because the word "liberty" applies only to the punishment Jones might receive if convicted, and the consideration of punishment is not relevant to the jury's inquiry of whether Jones was guilty. The State further contends that any comments regarding punishment were irrelevant to the jury's decision because Jones was charged as a prior offender, and therefore any sentencing would be performed by the court, not the jury, under Section 557.036. Adopting this reasoning, the trial court prohibited Jones from using the word "liberty" during his closing argument, but allowed Jones to argue to the jury that the outcome of their decision could have significant and long-term effects on him.

 It is well established that the trial court has considerable discretion in regulating the content of closing argument. *Tramble*, 383 S.W.3d at 37. The trial court has the power to confine the subject matter of closing argument to relevant issues based upon the evidence presented at trial. *State v. Cloninger*, 760 S.W.2d 550, 552 (Mo.App. S.D.1988). However, this discretion is balanced against the wide latitude accorded litigants when making their closing arguments to the jury. *State v. Rasheed*, 340 S.W.3d 280, 286 (Mo.App. E.D.2011). When examining the extent to which the trial court is permitted to exercise its discretion by restricting content in a party's closing argument, we have stated:

> A trial court must carefully refrain from unduly restricting the arguments of counsel. Counsel should not only be allowed wide range in organizing the facts for the jury in a pattern most favorable to his client, he must also be permitted to argue from the facts those reasonable inferences which most strongly favor his client. It is error not to permit counsel this latitude in his closing argument.

*State v. Dickson*, 596 S.W.2d 482, 485 (Mo. App. E.D.1980) (internal citations omitted). Within this context, we review the trial court's ruling prohibiting Jones from stating to the jury during closing argument that their decision would impact his liberty.

 Having thoughtfully considered this issue, and ever mindful of the trial court's broad discretion in regulating the scope of closing argument, we nevertheless find that the trial court erred in prohibiting Jones from mentioning the word "liberty" during closing argument. We are not persuaded that the concept of liberty is an irrelevant issue for consideration by a jury during the guilt phase of their deliberation. Liberty is the most basic and fundamental right guaranteed to citizens of our country by the United States Constitution. As explained by the United States Supreme Court, "[liberty] denotes not merely freedom from bodily restraint but also the right of the individual to contract, to engage in any of the common occupations of life, to acquire useful knowledge, to marry, establish a home and bring up children, to worship God according to the dictates of his own conscience, and generally to enjoy those privileges long recognized at common law as essential to the orderly pursuit of happiness by free men." *Meyer v. Nebraska*, 262 U.S. 390, 399, 43 S.Ct. 625, 67 L.Ed. 1042 (1923) (citations omitted). Here, Jones's liberty is implicated not solely by the length of sentence, but also by the fact of conviction. The existence of a criminal conviction may adversely affect an individual's ability to obtain employment, creates a stigma associated with being found guilty of a criminal

offense, and generates other collateral consequences not produced directly by the sentence rendered by the trial court or recommended by the jury. *See, e.g., Yale v. City of Independence,* 846 S.W.2d 193, 195 (Mo. banc 1993) (legislative purpose in allowing judges to order suspended imposition of sentence after conviction is to allow defendant to avoid stigma of conviction). These effects arise from the nature of conviction of a criminal act, not as *de jure* punishment.

■ The wide latitude allowed the State to emphasize the importance of the rule of law during closing argument supports our holding that a criminal defendant during closing argument may highlight the importance of the rights of the accused. Missouri case law allows the State to argue that the jury has a duty to enforce the law and the merit of sending a message that criminal conduct will not be tolerated. *State v. Cobb,* 875 S.W.2d 533, 537 (Mo. banc 1994). It is also permissible for the State to argue that the jury has a responsibility to protect fellow citizens by convicting individuals proven guilty of crimes. *State v. Kee,* 956 S.W.2d 298, 304 (Mo.App. W.D.1997). Significantly, the importance of the rule of law and the need to punish offenders are not relevant to the inquiry of whether a particular criminal defendant committed a specific offense charged. Yet, the State is permitted to argue these points under the wide latitude allowed in presenting closing argument.

A logical corollary to the State's right to emphasize the impact of crime on society is the defendant's right to stress the importance of the jury's duty to carefully weigh the evidence of a defendant's guilt given the significant impact a criminal conviction will have upon the defendant. The importance of this principle was reflected in the trial court's decision to allow Jones to argue that the jury's decision would have significant consequences for Jones. Setting aside the narrow distinction between the prohibited and allowed content of Jones's closing argument, we reject any suggestion of a broad prohibition against using the word "liberty" by criminal defendants in their closing argument. Accordingly, Jones was entitled to argue to the jury, that they should be mindful of the effect their decision would have on his liberty. The trial court erred in prohibiting this argument.

■ Having found that the trial court erred in precluding Jones from using the word "liberty" in his closing argument, we consider whether that error prejudiced Jones. Trial court error creates prejudice when there is a reasonable probability that the error affected the outcome at trial. *Tramble,* 383 S.W.3d at 37.

We find no evidence in the record that any prejudice resulted from the trial court's error. The jury was presented with two significantly different versions of the facts relating to the assault on Woods. The jury believed the testimony of Woods over the version of events portrayed by Jones. We are not persuaded that the jury would likely have altered this factual determination had Jones been allowed to argue in closing argument that his liberty was at stake. Moreover, as already noted, the trial court permitted Jones to argue, and Jones did argue to the jury, that its decision would have significant and long-lasting consequences on him. Although Jones was denied his right to use the word "liberty," the trial court permitted Jones to emphasize to the jury that its decision would have significant consequences for him. The terms Jones was permitted to use aptly describe for the jury the impact their verdict could have upon Jones.

Given the clear determination of witness credibility by the jury, and the language Jones was permitted to use during closing

argument, we reject any suggestion that the jury would have acquitted Jones but for the trial court's prohibition of the use of the word "liberty" during Jones's closing argument. Because the trial court's error did not result in prejudice to Jones, we deny this point on appeal.

## II. The trial court did not abuse its discretion in allowing admission of the full transcript of Jones's interrogation.

In his second point on appeal, Jones argues that the trial court erred in admitting Jones's full statement made during a police interrogation, including objectionable statements made by Officer Paiva. Jones contends the trial court erred by not redacting Officer Paiva's statements from the transcript of the interrogation. Jones specifically alleges that the objectionable statements constitute impermissible opinion testimony.

During the interrogation, Officer Paiva offered a series of questions and comments in response to Jones's factual description of the events at issue. Prior to trial, Jones objected to the admission of the full transcript of the interrogation, and requested that the trial court redact statements by Officer Paiva that "the wounds that the defendant described would not have healed by the time the statement was made," "the wounds [Jones] described would have required stitches," and "people who act in self-defense call the police right away." The full context of those statements within Officer Paiva's interrogation of Jones is as follows:

> Detective Paiva: But yet he's the one who has the visible scars. I'm looking at you right now I see some old stuff but I don't see six gashes like you were talking about. I mean especially if you didn't get medical attention. You know, you'd have some stitches or some sort of severe scar, you know, that isn't—appears a little bit newer. I mean this happened on November 4th of this year, and today is December 14th. So you're talking just over a month. And I don't see any wounds that you know, are scabbed up, or anything that looks very recent on you that makes.... corresponds with your story of you getting beat up that bad.

> Jones: The thing is, officer, with me, when I basically start using stuff like witch-hazel and all that type of stuff. I use witch-hazel. I also use the antiseptic wash. I mean and plus, I used antiseptic ointments when I do stuff, and I wrapped my head in bandages. That's how I walked around for a couple of days, with my head bandaged up.

> * * *

> Detective Paiva: [H]ow come you don't have any month-old looking scars or fresh marks on your face that make it look like you got beat up pretty bad like you're saying?

> Jones: I learned a long time ago, through steps I guess you would call self training, self study, what it takes to take care of wounds and I basically ... I'm a private contractor. I done went through roofs. I fell through this, I fell through that. I cut my arms. Still what I do when I clean my wound, I make sure it's really clean real well. I mean I don't clean it once or twice, I clean it several times and make sure the bleeding is stopped and then I put a compression bandage on it more or less and make sure everything is sealed up real good to keep infection out. As long as infection don't set in, I know it heals itself real well.

> * * *

> Detective Paiva: You see it's a scar there? I mean, if you had the gashes

that you're talking about, bloods running in your eyes and you cannot see ...

Jones: The gashes were not that deep. They were basically just open wounds.

Detective Paiva: Open wounds on your forehead?

Jones: Yeah.

Detective Paiva: Do you realize an open wound on your forehead requires stitches for it to heal properly? And then you would, you would definitely have a big scar?

Jones: I was told so far, so deep, would require stitching.

Detective Paiva: Well how deep can it go on your forehead? Your bone's right there. It can't go very deep. Right?

Jones: I guess it depends on ...

Detective Paiva: Before it hits bone?

Jones: That's what I'm saying; I guess it depends on how deep.

* * *

Jones: I never knew that defending yourself could be considered assault. But I guess when hey.....

Detective Paiva: Well defending yourself is defending yourself, but if you never call the police and you never say anything about it until you're arrested for it, that kind of makes it difficult to say that you were defending yourself ...

Jones: Yeah.

Detective Paiva: Because people that are defending themselves, the first thing they want to do, is they want to call the police and say they were defending themselves and give us the opportunity to conduct our investigation, especially when it comes to something as serious as someone beating you with a gun and you cutting them with a box cutter. It's a pretty serious event that took place right? Someone could have gotten killed. . . .

Jones: See that's what I'm trying to understand. I don't remember cutting the man, yet I also know for a fact they had my box cutter.

■■■ Testimony offered for the purpose of presenting a witness's opinion to the jury is subject to limitations as to the topic of the opinion and witness competency. *See State v. Haslett*, 283 S.W.3d 769, 779 (Mo.App. S.D.2009). However, a statement of a police officer's opinion expressed to a defendant in the context of interrogation is not objectionable on the ground that it is impermissible opinion evidence if the statement is offered to provide context to the defendant's answers, rather than to prove the truth of the officer's opinion. *State v. O'Brien*, 857 S.W.2d 212, 222 (Mo. banc 1993).

In this case, the record is clear that Officer Paiva's statements were not offered at trial for the purpose of proving the medical fact that Jones's wounds would not have healed fully if the incident had occurred as Jones described. At trial, the State played the entire audio interview to the jury during its direct examination of Officer Paiva. The State questioned Officer Paiva regarding the fact that Jones claimed that the wounds had healed fully without any visible scars over the five weeks between the altercation and the interrogation. We note from the record that the State did not question Officer Paiva regarding his opinion as to whether Jones's wounds would have healed so quickly, or whether Officer Paiva believed Jones was lying. The State simply introduced the entire interrogation transcript into evidence and questioned Officer Paiva about his investigation.

The only direct reference to Officer Paiva's opinion regarding the medical evidence at issue occurred during Jones's

cross-examination, where the following exchange occurred:

Jones: You also were arguing with Mr. Jones [during the interrogation] about him being healed up after 40 days, right?

Officer Paiva: It wasn't an argument. It was more like an observation.

Jones: Okay. You don't know how severe the wounds were in the first place though, right?

Officer Paiva: Only what he was telling me.

Jones: Okay. And you don't know how quickly he heals as compared to anyone else in the world right?

Officer Paiva: That is correct.

Jones: Okay. And you have no medical training, correct?

Officer Paiva: Other than basic stuff in the academy, no.

Jones: Right. Basic first aid as any first responder would get, right?

Officer Paiva: Right.

Jones: So you're not a plastic surgeon or anything like that that can give testimony about how long any particular wound would take to heal, right?

Officer Paiva: Correct.

To the extent that the jury was presented evidence of Officer Paiva's opinion as to the medical facts of Jones's alleged injuries, that opinion evidence was developed by Jones's cross-examination of Officer Paiva, not by the full transcript of the interrogation.

Similarly, the record is clear that the full transcript was not offered to prove that Jones's version of the events at issue was a fabrication because Officer Paiva held the opinion that persons acting in self-defense file police reports, which Jones did not do. Officer Paiva's statement was not argued by the State as proof of that fact. Rather, the statement was made during the interrogation for the purpose of having Jones clarify his statement as to the events at issue, and to explain his reason for not filing a police report.

After carefully reviewing the record, we find no abuse of discretion in the trial court's decision to admit the full transcript of Jones's interrogation. Officer Paiva's statements were offered at trial to provide context to Jones's answers during the interrogation. Jones's statements during the interrogation were made in response to specific questions by Officer Paiva, and the text of those questions was therefore helpful to understand the full context of Jones's answers. Officer Paiva's statements occurred in the context of, and were admitted to show, a give-and-take conversation with Jones. *See O'Brien,* 857 S.W.2d at 222. Accordingly, the statements did not constitute impermissible opinion evidence. Point denied.

*Conclusion*

Finding no prejudicial error, we affirm the judgment of the trial court.

LAWRENCE E. MOONEY, P.J., and PATRICIA L. COHEN, J., Concur.