

# In the Missouri Court of Appeals
# Eastern District

## DIVISION TWO

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED101332 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of the City of St. Louis |
| vs. | ) | 1222-CR04018-01 |
| | ) | |
| ROSCOE R. MEEKS, | ) | Honorable Margaret M. Neill |
| | ) | |
| Defendant/Appellant. | ) | FILED:  June 23, 2015 |

## OPINION

Roscoe R. Meeks (Defendant) appeals from the judgment upon his convictions by a jury

for one count of assault in the first degree, in violation of Section 565.050, RSMo 2000,[1] and

one count of armed criminal action, in violation of Section 571.015.  The trial court sentenced

Defendant as a prior and persistent offender to twenty-years' imprisonment for assault and ten-

years' imprisonment for armed criminal action, to be served concurrently.  We affirm as

modified.[2]

## Factual and Procedural Background

Defendant was charged with first-degree assault and armed criminal action after shooting

Victim, a Spanish-speaking immigrant with a limited comprehension of English, at an apartment

complex in the City of St. Louis.  During the three-day jury trial, the State called as witnesses

Victim, Victim's friend, Victim's ex-girlfriend, and Detective Brian North-Murphy.  Defendant

---

[1]  Unless otherwise indicated, all further statutory references are to RSMo 2000 as amended.

[2]  The written sentence is modified to reflect oral pronouncement at sentencing.

did not testify and did not present any evidence.

Following the trial court's denial of motions for judgment of acquittal at the close of State's evidence and all evidence, the jury found Defendant guilty of both first-degree assault and armed criminal action. The court found that Defendant was a prior and persistent offender and sentenced Defendant to a total of twenty-years imprisonment. This appeal follows. Additional facts will be set forth in the opinion as necessary to address Defendant's points on appeal.

Batson Challenge

In his first point, Defendant argues the trial court clearly erred in denying his Batson challenge to the State's peremptory strike of an African-American venireperson because the record refutes the State's proffered reasons for the strike. We disagree.

We review a trial court ruling on a Batson challenge for clear error. State v. McFadden, 191 S.W.3d 648, 651 (Mo. banc 2006). "A finding is clearly erroneous when the reviewing court is left with the definite and firm conviction that a mistake has been made." McFadden, 191 S.W.3d at 651.

Under Batson, peremptorily striking venirepersons for no other reason than their race violates a defendant's right to equal protection under the law. Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). In order to make a proper Batson challenge, a defendant must make a prima facie showing of purposeful discrimination; namely, that the defendant belongs to a cognizable race and that the prosecutor exercised peremptory strikes to remove members of the defendant's race from the jury. State v. Parker, 836 S.W.2d 930, 933-34 (Mo. banc 1992).

It is then for the State to rebut the *prima facie* case by offering a race-neutral

explanation for the strike. Id. at 934. "Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race-neutral....[D]isparate impact alone will not convert a facially race-neutral explanation into a per se violation of equal protection." Id. (citing Hernandez v. New York, 500 U.S. 352, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991)).

Finally, the defendant then bears the burden to show that the State's proffered race-neutral reasons are merely pretextual justifications for underlying discrimination. Id.; State v. Washington, 288 S.W.3d 312, 315 (Mo. App. E.D. 2009). A crucial, though not dispositive, factor in determining pretext is "the existence of similarly situated white jurors who were not struck." State v. Marlowe, 89 S.W.3d 464, 469 (Mo. banc 2002) (quoting Parker, 836 S.W.2d at 940). Other factors include the "degree of logical relevance between the proffered explanation and the case to be tried," the prosecutor's credibility based on his or her conduct during *voir dire* and "the court's past experiences with the prosecutor," and "the demeanor of the excluded venirepersons." Marlowe, 89 S.W.3d at 469-70 (quoting Parker, 836 S.W.2d at 940). The trial court must consider the totality of the circumstances in determining pretext, and we give considerable deference to the trial court's determination in light of its factual and subjective nature. See Marlowe, 89 S.W.3d at 469-70; Parker, 836 S.W.2d at 934.

During *voir dire*, defense counsel polled the jury on the presumption of innocence. The following exchanged then occurred:

> VENIREPERSON ARNOLD: Statistically speaking, we live in the seventh most dangerous city in the United States. And I hate to go into race here. But statistically, we're in St. Louis; he's black. There's more into it, but I don't know those facts. But it's more than likely he did something. I'm not saying—what's the word. It's more likely he's guilty.
> [DEFENSE COUNSEL]: All right.
> VENIREPERSON ARNOLD: However, I personally don't believe there's evidence backing that up. There is no weapon, there is no –

3

[DEFENSE COUNSEL]: You don't know. We haven't gotten into the evidence yet.

VENIREPERSON ARNOLD: Well, she's saying there's only going to be speaking. To me, there's not enough evidence to back that up. On one side, he's guilty. On the other side, all that stuff that we've discussed, he's not guilty. So I'm neutral.

Defense counsel then stated:

And I don't want to open up a can of worms the Judge doesn't want to open up at ten to five with a few things said there. But does anyone share any of those sentiments, or is everyone able to do what the Judge is asking of them and required in the instructions and presume that [Defendant] is innocent because you haven't heard any evidence yet? Is everyone able to do that? All right. Thank you.

Following *voir dire*, the State moved to strike Venireperson Arnold for cause, and the motion was sustained without objection. The State also moved to strike Venireperson Collins, and at the conclusion of peremptory strikes, Defendant made a Batson motion as to Venireperson Collins. While the prosecutor was providing an explanation for the strike, the following exchange occurred:

[PROSECUTOR]: The reason I struck Ms. Collins is that when Mr. Arnold made very racist statements in the box, there was a huge outcry behind me. I struck Ms. Hosie; I've struck Ms. Collins. The rest of the row was struck already for cause. That leaves Donna Knight, who I could pretty much place my bets on the defense will likely strike her. So to make sure I don't start out the case where there is a person of Mexican descent and African-American descent upset about racial issues, I feel better if no one in that row directly behind me is serving. So I made my bets the defense is more likely to strike Knight than Collins, and I chose Collins.

THE COURT: Well, the Court will agree that Mr. Arnold's statements were definitely racist, and the Court finds that the State's reasoning for striking Ms. Collins and Ms. Hosie are racially neutral. Because that what he had to say [sic] was quite offensive to the Court and I'm sure everyone else in the courtroom. Did you have a Batson motion on Hosie? I guess not.

[DEFENSE COUNSEL]: No, your Honor. I didn't know when that happened exactly who expressed some sort of disgust. I think like ten people in the courtroom made a gasp when that happened. It was hard to pinpoint it was Ms. Collins.

[PROSECUTOR]: I would agree most of the courtroom gasped. There was somebody directly behind me who yelled, let's open that can, and it was a

4

> woman's voice.  But I didn't want to spin around, and the statement was over.
> And there's a difference between being offended, which I think we all were,
> most of the courtroom gasped, including my table, and a difference of yelling
> that and interjecting that into a case. And I feel like, "let's open that can" is
> different than just being offended.

The court then asked if there was anything further, and defense counsel stated, "No, your Honor, that was is it [sic]."

Defendant, citing Batson, argues that the State's strike of Venireperson Collins was racially motivated, and its reason for the strike—that Venireperson Collins was offended by another venireperson's racist remarks—was pretextual. [3]  However, the totality of the circumstances supports the trial court's ruling that the prosecutor's explanation was based on the desire for a race-neutral decision based on the evidence, and not on racial animus.  State v. Rollins, 321 S.W.3d 353, 368 (Mo. App. W.D. 2010).

Here, the prosecutor struck the white venireperson who made the initially objectionable remarks which provoked the outburst.  Also, the prosecutor struck a white female (Venireperson Hosie) and a black woman (Venireperson Collins) from the same row.  Three other venirepersons in that row had been stricken for cause and Defendant struck Venireperson Knight (a latent fingerprint examiner for the St. Louis County Police Department) from that row because Defendant had sought to strike that venireperson for cause.  As a result, and most importantly, every venireperson, regardless of race, who might have been involved in the incident on either side was eliminated from that row and did not serve on the jury. [4]

Viewed in the light of specific events which occurred at trial, the trial judge's ability to

---

[3]  Venireperson Collins was not identified in the transcript as African-American.  As such, the parties stipulated for purposes of appeal that Venireperson Collins is an African-American female, that Venireperson Hosie is a white female, and Venireperson Arnold is a white male.
[4]  The parties stipulated that no venirepersons from the row occupied by Venirepersons Collins and Hosie served on the jury.

observe the resulting impact on the courtroom atmosphere, and the trial judge's unique ability to observe the demeanor of both the prosecutor and the challenged venireperson, the trial court's ruling that the strike was race neutral was proper. See Rollins, 321 S.W.3d at 368 (totality of the circumstances was sufficient to support trial court's ruling that State's strike of venireperson was race neutral and not pretextual). The trial court did not clearly err in overruling Defendant's Batson challenge to the State's peremptory strike of Venireperson Collins. The State gave a race-neutral reason, which was not pretextual. Moreover, the State struck similarly-situated white venirepersons (Arnold and Hosie) who either participated or may have participated in the exchange, and the entire row was eliminated from the jury. Point I is denied.

Closing Argument

In his second point, Defendant argues the trial court abused its discretion in sustaining the State's objection to defense counsel's closing argument that a conviction was significant and would have "dire consequences" for Defendant. Defendant contends that as a result of defense counsel being prevented from commenting on the consequences of the criminal conviction, he was prejudiced. We disagree.

During closing argument, defense counsel made the following remarks:

> I expect some emotion for [Defendant], as well as for [Victim].

*       *       *

> Now there's a lot that hangs in the balance. For [Defendant], this isn't some sort of law school examination. This is not a mock trial. This is real life. The State is asking you to convict him. That's going to have dire consequences.
> [PROSECUTOR]: Objection to the comment on consequences. We're asking the jury to convict; that's it.
> THE COURT: The objection's sustained.
> [DEFENSE COUNSEL]: They're asking you to convict him of a criminal offense based on that evidence. And there's a lot at stake here.
> [PROSECUTOR]: Objection again.
> [DEFENSE COUNSEL]: And the question is—
> THE COURT: Overruled.

6

A trial court has considerable discretion in regulating the content of closing argument. State v. Jones, 398 S.W.3d 518, 522 (Mo. App. E.D. 2013). As such, an appellate court reviews a trial court's judgment regulating the content of closing argument for an abuse of the trial court's discretion. Jones, 398 S.W.3d at 521. Even if a reviewing court finds the presence of error, it will not reverse the trial court's judgment unless it finds that the error prejudiced the defendant in such a manner that a reasonable probability exists that the error affected the outcome at trial. Id.

Here, we find no evidence in the record that any prejudice resulted from the trial court's error. First, the case turned on the credibility of two eyewitnesses. Victim's friend, who was a witness to the shooting, testified that he was confident of his identifications of Defendant as the shooter in a photo lineup, in a physical lineup, and at trial. Victim testified that he was 100% certain that Defendant was the shooter, and had previously identified Defendant in a physical lineup in which Defendant was placed in a different position than he was in at the time Victim's friend identified him. Based on this evidence, it is unlikely the jury would have changed its assessment of the credibility of these identifications had the objection to Defendant's use of the words, "dire consequences" in his closing argument not been sustained. Second, Defendant made essentially the same point multiple times without objection. Id. at 523. During *voir dire*, Defense counsel emphasized the consequences of a criminal conviction to the jury:

> I mean, a guy's freedom is at stake. Everyone knows the gravity of the situation. We're not arguing over money here. This is a man's liberty. They're asking you to convict him of a crime with huge impacts.

Later, during closing argument, Defendant was permitted to argue, again without objection, that "there's a lot at stake here", "[t]here's too much at stake to come back guilty on 50/50",

7

"[r]ight now another person's future hangs in the balance, [Defendant's]" and "I expect some emotion for [Defendant], as well as for [Victim]." Because the trial court's error did not result in prejudice to Defendant, Point II is denied.

## Conclusion

As noted previously, the trial court sentenced Defendant as a prior and persistent offender to twenty-years' imprisonment for assault and ten-years' imprisonment for armed criminal action, to be served concurrently. The State admits that there is a variance between the oral pronouncement and the written judgment and sentence. The written judgment states that Defendant was sentenced to twenty-years' imprisonment for each count, to be served concurrently; whereas in the oral pronouncement, the court sentenced Defendant to twenty-years' imprisonment for assault and ten-years' imprisonment for armed criminal action, to be served concurrently. The trial court's written judgment and sentence should reflect its oral pronouncement of sentence before the defendant. State ex rel. Zinna v. Steele, 301 S.W.3d 510, 514 (Mo. banc 2010). Where there is a material variance between the written judgment and the oral pronouncement, the oral pronouncement is controlling. Id. We need not remand the case where we can properly rectify the sentence. State v. Harris, 364 S.W.3d 790, 796-97 (Mo. App. W.D. 2012). Accordingly, we correct and modify the judgment to reflect Defendant's sentence as twenty-years' imprisonment for assault and ten-years' imprisonment for armed criminal action, to be served concurrently. Rule 30.23. The judgment is affirmed as modified.

_____

Mary K. Hoff, Judge

Sherri B. Sullivan, Presiding Judge and Mark D. Pfeiffer, Sp. J., concur.

8