**STATE of Missouri, Respondent,**

v.

**John G. GRIMM, Appellant.**

**Nos. 56690, 57227.**

Supreme Court of Missouri,
Division No. 2.

Nov. 13, 1972.

John C. Danforth, Atty. Gen., G. Michael O'Neal, Asst. Atty. Gen., Jefferson City, for respondent.

Daniel P. Reardon, Jr., St. Louis, for appellant.

KENNETH R. LEWIS, Special Judge.

Appellant's sole point on this consolidated appeal is that the trial court erred in admitting evidence of appellant's lineup identification on the ground that such identification was so suggestive as to be violative of appellant's right to due process of law.

The appellant was charged with sodomy in each case. The occurrence giving rise to the charges took place on the evening of February 7, 1969. The two youthful victims, Dennis Clark and Joseph Crapo, were patrons of a coffee house known as "The Exit" located in the Gaslight Square area of St. Louis. The evidence was undisputed that four members of a motorcycle gang calling themselves the "Bone Shakers" entered the coffee house and, after a twenty to thirty minute stay, forcibly removed the two victims from the coffee house.

The manager of the coffee house positively identified the appellant at trial as

one of the gang members who was in the coffee house on the night in question. He further testified that he had observed the appellant talking to the victims. His attention had been particularly called to appellant because a disturbance had occurred and he had seen appellant lying on the floor laughing. According to the manager, the coffee house was lighted well enough to provide "adequate light to see the faces of the patrons".

The two victims testified that they were accosted by the gang in the coffee house and forcibly removed to a parked car. They were then driven to a house in Jennings, Missouri. During the trip to Jennings they were forced to keep their heads down and their eyes covered so that they had little opportunity to observe their abductors. The interior of the house was described by the victims as being as well lighted as the courtroom at the trial. Several acts of sodomy were committed against each victim over a two or three hour period by members of the gang and particularly one called "Georgie". Some of these acts were committed against one victim in the presence of the other. The evidence is abundantly clear that both victims had ample opportunity to observe their assailants in well lighted surroundings during this period of time.

After the attacks, Clark and Crapo were driven back to the Gaslight Square area, severely beaten, and released. The victims immediately reported the crimes and gave the police descriptions of their assailants. One of these descriptions was not inconsistent with appellant's appearance at the time of his arrest.

The appellant was arrested the following day by the Jennings Police. He was processed at the police station by Officer Virgil W. McKinney, who testified that appellant wore a moustache and goatee at the time of his arrest. Appellant was photographed by Officer McKinney prior to being locked up. Approximately two hours later Officer McKinney observed appellant leaving the police station and noticed that he no longer had the moustache and goatee.

Appellant was taken to the Ninth District Station where, after waiving his right to counsel, he was placed in a lineup before the two victims. A positive identification was made by victim Crapo of appellant as being the "Georgie" involved in the attacks and Crapo noticed that appellant's "moustache and his beard was all picked off his face". However, victim Clark was uncertain and did not positively identify the appellant as one of the assailants. When Clark was asked at the trial why he had not identified the appellant at the initial lineup, he testified, "I was almost sure, but I was not quite positive, so I didn't." Clark further testified, "It didn't look like the same moustache and goatee, or it was gone. Other than that, it looked like the same person; same height, same facial features, and everything. But I assumed with a nickname 'Georgie', his name would be George, and this man's name was John. And so, I didn't know what to do, so I had a doubt."

Following the first lineup, the victims were told by the police that John G. Grimm's middle name was "George". Clark was also informed by the police that appellant had plucked out his moustache and goatee while in jail.

The following day, the suspects, including appellant, were individually brought before Clark and Crapo in the detective room at the police station. Crapo identified appellant a second time as the "Georgie" involved in the attacks. Clark was still "kind of confused" and again did not make a positive identification.

A third lineup was held the next day, February 10, 1969, at the Jennings Police Station. This lineup included the men previously identified by both victims as participants in the crimes. At that time, Clark identified appellant as the "Georgie" involved in the offenses.

Appellant filed a motion to suppress the evidence of his lineup identification which

was overruled by the trial court on the ground that the identification of appellant by Clark and Crapo had a basis independent of the lineups. Both Clark and Crapo identified appellant at the trial and also identified the photograph taken by Officer McKinney as being an accurate representation of how appellant appeared on the night in question. From the trial court's ruling on the motion to suppress evidence and the admission of such evidence at trial, the appellant has appealed.

The cases on lineup identification are legion and we see nothing to be gained by a further recital of these holdings. The law stated by this Court in the case of State v. Cannon, 465 S.W.2d 584, is pointedly dispositive of the singular issue presented herein. The Cannon case involved a robbery in which the witnesses observed the robber for a period of ten or twelve minutes under well lighted conditions. As in the case before us, there was evidence that the lineup procedure followed in Cannon was suggestive. At loc. cit. 586 this Court held, however, that: "While there is evidence indicating the lineup procedures were leading and suggestive in certain respects, there is testimony in the record which supports the finding of the trial court that the in-court identifications were based on what the witnesses saw at the time the offense was being committed and were not the result of improper or suggestive lineup procedures."

■ It would be a rare criminal case indeed which would present a set of facts in which the independent basis for identification would be more substantial than in the instant case. The victims were in the presence of their assailants in the coffee house for twenty or thirty minutes in "adequate light to see the faces of patrons". They were later subjected to sexual attacks over a two or three hour period under lighting conditions described as being similar to that in the courtroom. These facts demonstrate a clear and convincing independent basis for identification supporting the finding of the trial court.

■ The evil to be avoided in lineup identification is misidentification by suggestion. The Supreme Court of the United States in United States v. Wade, 388 U.S. 218, loc. cit. 229, 87 S.Ct. 1926, loc. cit. 1933, 18 L.Ed.2d 1149, warned that ". . . the dangers for the suspect are particularly grave when the witness' opportunity for observation was insubstantial, and thus his susceptibility to suggestion the greatest." We think that the converse is also true.

■ We note in passing that witness Crapo positively identified the appellant at the initial lineup and that witness Clark stated that ". . . it looked like the same person; same height, same facial features, and everything." The only uncertainty was created by the undisputed fact that appellant had in some manner removed his moustache and goatee subsequent to his arrest. Under such circumstances, the information supplied by the police and the additional lineups were not so unreasonable as to violate due process of law.

■ It is not our intent to endorse the somewhat leading methods of identification used by the police in this case. Under a different set of facts, such procedures might necessitate reversal. But, as was stated by the Supreme Court of the United States in Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247, "each case must be considered on its own facts." And we hold that under the facts presented herein any suggestive influence was far outweighed by the extremely credible independent basis for the identification.

The judgment in each cause is affirmed.

MORGAN, P. J., HENLEY and DONNELLY, JJ., and CONNETT, Special Judge, concur.