STATE of Missouri, Plaintiff-Respondent,

v.

Leroy John HAMPTON, Defendant-Appellant.

No. 35327.

Missouri Court of Appeals,
St. Louis District,
Division One.

April 23, 1974.

———◆———

Robert E. Heisler, Donald L. Schmidt, Christopher T. Hexter, Legal Aid Society, St. Louis, for defendant-appellant.

John C. Danforth, Atty. Gen., G. Michael O'Neal, Ellen S. Roper, Asst. Attys. Gen., Jefferson City, Brendan Ryan, Circuit Atty., John D. Chancellor, Asst. Circuit Atty., St. Louis, for plaintiff-respondent.

WEIER, Judge.

A jury found defendant, Leroy John Hampton, guilty of first degree robbery by means of a dangerous and deadly weapon. Upon failure of the jury to determine the sentence, the court assessed punishment at fifty years imprisonment.

Defendant raises four points of error on appeal: First, that the trial court erred in denying his motion to suppress certain in-court identification testimony; Second, the court erred in refusing to grant a mistrial when a witness for the state testified that defendant refused to make a statement concerning the crime; Third, the court erred in denying his motion to suppress incriminating statements he made when in custody; and Fourth, the evidence was insufficient to support one of the essential elements of robbery. We affirm.

In the afternoon of November 24, 1971, two men entered Car Parts, Inc. in the City of St. Louis and ordered parts for a brake job. Both men produced weapons when the parts were brought to the counter. One of the men, subsequently identified as the defendant, ordered the employees to the back of the store where he bound the hands of some of them with wire. A customer, Anthony McColl, entered the store and saw one of the men, subsequently identified as Eddie Brown, standing behind the counter. Brown revealed a sawed-off shotgun to McColl and announced a "stick-up". McColl was taken to the back room where he noticed some of the employees lying on the floor with their hands tied and defendant who was holding a pistol. While this was happening, one of the employees who was in another part of the store managed to get word to the police. When the officers arrived, they surrounded the store and ordered the men to come out. However, defendant and Brown managed to get out of the building by taking and holding one of the employees as a hostage. Defendant, Brown and the hostage then got into a car, but before it pulled away, Officer Bell shot and wounded defendant with his shotgun. Shortly thereafter, Officers Waggoner and Meddlin discovered the two men not far from the scene of the robbery, and after a short chase, they captured and arrested defendant.

Defendant's first point attacks the legality of certain pretrial identification procedures. He claims that these procedures gave rise to the possibility that the witnesses who viewed them made "irreparable mistaken identifications."

Defendant enumerates the following circumstances in support of his claim: (1) his appearance in a lineup with three other black men; (2) his appearance in a photograph of this lineup; and (3) his appearance in a hospital room confrontation.

Three days after the robbery, defendant was placed in a lineup with three other black men. A portion of his head had been shaved to facilitate treatment for bullet wounds. Three witnesses to the robbery identified him in the lineup as one of the robbers and gave identification testimony at the trial. Another witness, Officer Jesse Lloyd, subsequently identified defendant when shown a photograph of the lineup and gave identification testimony at the trial.

Defendant contends that the lineup was a suggestive confrontation because he was the only person appearing in it who had a portion of his head shaved. He argues that since the witnesses identifying him at the lineup and from a photograph of it were well aware of the fact that one of the robbers had been shot during the robbery, the witnesses' identification may have been impermissibly influenced by his shaved head.

■ Whenever an in-court identification is attacked upon the ground that pretrial identification procedures violated due process, our inquiry extends to a determination of whether the procedures were unduly suggestive, and, if unduly suggestive, whether there is an independent source of the identification which would nonetheless support its admissibility. State v. Jackson, 477 S.W.2d 47, 51 [4] (Mo.1972). Thus, even though a pretrial identification procedure may have been unduly suggestive, if the identification is otherwise reliable the procedure does not so offend due process as to make the subsequent in-court identification inadmissible. Neil v. Biggers, 409 U.S. 188, 199, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972).

■ The suggestiveness of the lineup in this case either stands or falls upon the observation by the witnesses of defendant's shaved head. Of the witnesses who viewed the lineup and gave identification testimony at the trial, only witness Ronald Williams noticed that defendant's head was shaved when he appeared in the lineup.

The record in this case does not indicate whether Officer Lloyd noticed that defendant's head was shaved when he made his out-of-court identification from the photograph of the lineup. Thus, the lineup could have only been suggestive insofar as witness Williams was concerned and, possibly, Officer Lloyd. In any event, the out-of-court identifications of defendant by Williams and Lloyd were otherwise reliable. Williams and Lloyd had an independent source of identification sufficient to admit their in-court identifications. Both witnesses had an ample opportunity to view the defendant during the robbery and both specifically stated at the trial that his in-court identification was based upon such independent observation.

■ Out-of-court identifications of defendant were also made by two police officers who viewed defendant while he was in the hospital, and both officers gave identification testimony. Again, however, the record in this case indicates that both officers' in-court identification testimony had a source independent of the hospital confrontations.

Under these circumstances, the trial court neither erred in denying defendant's motion to suppress identification testimony nor in admitting this testimony at the trial. Moreover, we are confident that there is no reasonable basis which could possibly lead to the conclusion that defendant was or may have been misidentified since there were at least nine witnesses who gave positive identification testimony in this case. See State v. McIntosh, 492 S.W.2d 843, 846 (Mo.1973).

■ Defendant's second point is that his fifth amendment right to remain silent was denied by the trial court's overruling his motion for a mistrial based upon an investigating officer's testimony on direct examination. He relies on the rule that the silence of a person under arrest or in custody who is being interrogated about a crime may not be used in evidence against him because he is under no duty to speak. As

authority for this rule, defendant correctly refers us to State v. Phelps, 384 S.W.2d 616, 621 [8] (Mo.1964) and State v. Dowling, 348 Mo. 589, 154 S.W.2d 749, 755 [4, 5] (1941). However, we are of the opinion that the trial court did not abuse its discretion in refusing to declare a mistrial.

It is true, just as defendant states, that at the trial the circuit attorney asked one of the investigating officers whether defendant, after being advised of his constitutional rights, had said anything about the robbery. After the officer related two statements the defendant had made about the robbery, the circuit attorney asked, "Did you talk to him any further at that point?" To which the officer replied, "No, he refused to make any further statement." After the officer volunteered this latter testimony, defendant objected and asked the court, out of the jury's hearing, to declare a mistrial. Based solely upon the above sequence of events, defendant invokes the rule of the *Phelps* and *Dowling* cases.

The difficulty with defendant's argument is that the above set of facts is not all that occurred at the trial regarding the officer's testimony. After the court overruled defendant's motion for a mistrial, defendant's counsel asked the court, "Are you going to admonish the jury? Is my request for a mistrial overruled?" To counsel, the court replied, "Right.", and then immediately stated: "Members of the jury, you are instructed to disregard the last response of the witness regarding the alleged statement or failure to make a statement by this Defendant." Under these circumstances, the rule of the *Phelps* and *Dowling* cases was not violated, and the court did not abuse its discretion in overruling defendant's motion for a mistrial. State v. Humphrey, 462 S.W.2d 804, 806 [1] (Mo.1971).

Defendant next contends that the trial court erred in denying his motion to suppress confessions and in admitting into evidence certain inculpatory statements he made to police officers. He argues that there was insufficient proof that he voluntarily waived his rights under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L. Ed.2d 694 (1966).

Officers Ronald Meddlin and Walter Waggoner testified at the pretrial hearing on defendant's motion to suppress. Officers Meddlin and Waggoner arrested defendant on the day of the robbery after chasing him on foot for some distance. While they were chasing him, Officer Meddlin fired a shot. The defendant then "hit" the ground, and as the officers approached him, he blurted out, " 'I give up. I've been shot.' " The officers immediately placed defendant under arrest, and Officer Meddlin advised him of his constitutional rights under *Miranda, supra*. Defendant was then taken to City Hospital No. 1, where he was again advised of his rights—this time by Sergeant Antoon. According to Officers Meddlin and Waggoner, Sgt. Antoon asked defendant if he wanted to waive his rights, and defendant said "yes". Then, again according to Officers Meddlin and Waggoner, defendant admitted his participation in the robbery; stated that he had been shot by a policeman; and revealed the name of another person involved in the robbery. The court, in overruling defendant's motion to suppress, determined that the defendant's statements were voluntarily made.

■ At the trial, both Officers Meddlin and Waggoner testified concerning defendant's statements made at both the scene of arrest and the hospital. Defendant made no objection to this testimony. In fact, defendant pursued this line of inquiry on cross-examination in some detail. Only when Sgt. Antoon testified concerning defendant's statements made at the hospital did defendant object on the grounds stated in his pretrial motion to suppress. Accordingly, defendant has not preserved this issue for appellate review, and absent plain error under Rule 27.20(c), V.A.M.R., the issue should not be considered. State v. Stevens, 467 S.W.2d 10, 19 [7] (Mo.1971),

cert. den., 404 U.S. 994, 92 S.Ct. 531, 30 L.Ed.2d 546 (1971).

■ Defendant's statements, "I give up. I've been shot.", made to Officers Meddlin and Waggoner at the scene of arrest, did not constitute plain error when admitted into evidence at the trial. The statements were not made in response to any process of interrogation, but rather were spontaneously volunteered by defendant when he apprehended his situation. The fifth amendment does not prohibit "volunteered statements of any kind" from being used as evidence against a defendant accused of a crime. Miranda v. Arizona, *supra* at 478, 86 S.Ct. 1602; State v. Stevens, *supra* at 467 S.W.2d 20 [8]; Gregg v. State, 446 S.W.2d 630, 632 [1] (Mo. 1969).

■ The admission of defendant's incriminating statements made to Sgt. Antoon in the presence of Officers Meddlin and Waggoner at the hospital did not constitute plain error as the record supports the trial court's finding that defendant had voluntarily waived his *Miranda* rights. Contrary to defendant's claim, the fact that he was in the hospital awaiting treatment when he made the incriminating statements does not preclude the finding that his waiver was voluntary where there is no evidence that his physical condition in any way inhibited his understanding of the *Miranda* rights. *See* McDuffie v. State, 12 Md.App. 264, 278 A.2d 307, 310 [3] (1971). Nor is this the kind of case where the record is barren of testimony relating to the waiver issue as was the situation in State v. McGee, 447 S.W.2d 270 (Mo. banc 1969) on which the defendant relies. Defendant was given the required *Miranda* warnings twice before the incriminating statements were made. Once these rights were stated to defendant for a second time, the record shows not only that defendant understood these rights, but that he also wanted to waive them and make a statement concerning the robbery. The trial court properly overruled defendant's motion to suppress. State v. Hamilton, 490 S.W.2d 96, 98 [2] (Mo.1973); Burnside v. State, 473 S.W.2d 697, 700 [4] (Mo.1971).

■ Defendant's final contention challenges the sufficiency of the evidence. He argues that since the circumstantial evidence was insufficient to prove that either he or Brown took any money from Car Parts, Inc., his conviction for robbery must fail because "taking" is an essential element of the crime.

While there was no direct testimony that either defendant or Brown took money from Car Parts, Inc., there was testimony that the cash drawer contained money before the incident and that it was found empty about a half hour after the incident. The treasurer of the company testified it contained between three hundred and four hundred dollars. Moreover, there was direct testimony that defendant and Brown entered Car Parts, Inc. with the intent to take money. Brown was seen standing behind the counter near the cash drawer. Both defendant and Brown were armed with weapons they used to threaten and subdue the employees and occupants of the store. Thus, the jury had before it substantial evidence from which to infer that defendant took money from Car Parts, Inc. State v. Elam, 485 S.W.2d 100, 102 [1] (Mo.1972).

Judgment is affirmed.

DOWD, C. J., and SIMEONE, J., concur.