STATE of Missouri, Plaintiff-Respondent,

v.

Eugene Joseph BARNES, Jr.,
Defendant-Appellant.

No. 36732.

Missouri Court of Appeals,
St. Louis District,
Division One.

April 6, 1976.

Motion for Rehearing or Transfer
Denied May 17, 1976.

Application to Transfer Denied
July 12, 1976.

James C. Jones, Asst. Public Defender, Kent W. Fanning, Asst. Public Defender, St. Louis, for defendant-appellant.

John C. Danforth, Atty. Gen., Preston Dean, Asst. Atty. Gen., Jefferson City, Brendan Ryan, Circuit Atty., St. Louis, for plaintiff-respondent.

McMILLIAN, Judge.

This is an appeal by defendant Eugene Barnes from a conviction of attempted rape, a felony. Sections 559.260 and 556.-150, RSMo 1969. We affirm.

M___ M___, the victim, testified that on December 4, 1973, at about 10:30 P.M., she hailed a cab at the corner of Page and Kingshighway Boulevards in the City of St. Louis; but when she told the cabdriver where she was going he refused to take her. She turned around and a man was behind her. He began talking to her about his getting drunk that day, then said, " 'Bitch, put that umbrella over my head and walk just like you are with me because . . . I'm going to fuck your drawers off.' ". He told her that he had a gun and would kill her if she screamed. One hand was in his pocket and one around her.

The man walked her up a short alley. He made her lie down and then tore off one of her pantyhose and pulled her panties off. Over the course of the next two and one half hours he attempted to enter her four or five times but was unable to induce an erection. It was cold and wet, and she told him that there was an empty building across the street. He said that they would go there and that if she was lying he would kill her.

They began to cross the street at the intersection of Page and Kingshighway Boulevard. At this point the man took her purse, which contained several personal items. A truck was stopped at the intersection and Ms. M___ broke away and beat on the truck, asking for help. The man hit her and said that she was "his bitch." The truck driver, Robert Branscombe, opened the door and took her in. He then drove to the Seventh District Police Station.

Ms. M___ gave the police a description of the man; the police report said: "Negro male, 40, wearing a gray or black overcoat, with a tan shirt and black trousers." Upon receiving this information, Officer Rangel went out to search for the man. He found a person fitting the description at 5091 Page Avenue. The man, defendant, was searched and was taken to the police station. He was searched, and several items belonging to Mrs. M___ were found in his possession.

Officer Rangel brought defendant back to the Seventh District Police Station and, showing him to Ms. M___, asked her if he was the one. She said "Yes." There had been a lapse of about one-half hour from the time Ms. M___ escaped from the man and the time defendant was shown to her. The truck driver, Mr. Branscombe, was also at the police station when defendant was brought in and, when asked if he recognized him, answered, "Yes."

Later the police, at Ms. M___'s direction, went to the rear of 1336 Kingshighway Boulevard and found a pair of women's panties, pantyhose, and a wine bottle.

At trial, both Ms. M___ and Mr. Branscombe identified defendant as the man they had seen on December 4, 1973. Defendant presented no evidence. The case was submitted to the jury on instructions which permitted the theory that defendant, by means of threats, forced M___ M___ to submit to his attempts to commit the offense of rape. The court also submitted an instruction on common assault. The jury returned a verdict of guilty on the attempted rape charge. Defendant's motion for a new trial was overruled, and he was sentenced to ten (10) years in the Department of Corrections.

On appeal, defendant contends that the trial court erred in denying defendant's motion to suppress the identification testimony of M___ M___ and Robert Branscombe, on the grounds that the confrontation at the police station was so unnecessarily suggestive and conducive to irreparable mistaken identification as to be a denial of due proc-

ess of law under the Fourteenth Amendment to the United States Constitution. This contention must be considered in two parts: (1) Was the pretrial confrontation between the witnesses and the defendant prejudicial? (2) If so, did the witnesses have an independent basis for their in-court identification?

First, defendant alleges that the positive identifications one-on-one showup at the police station were prompted by a combination of prejudicial factors. In support of his claim, defendant cites the following circumstances: (1) the fact that defendant was shown to the witness alone, not as part of a lineup; (2) the fact that defendant was clearly under arrest and accused as her assailant; and (3) Ms. M___'s volatile state of mind at the time of the confrontation. Defendant argues that these factors created a substantial risk of misidentification.

█ It is not improper for the police to immediately return a freshly apprehended suspect to the scene of the crime for identification by one who has seen the culprit minutes before, *State v. Maxwell,* 502 S.W.2d 382 (Mo.App.1973) and *State v. Hamblin,* 448 S.W.2d 603 (Mo.1970). In Maxwell, supra at 389, the victim was brought to the scene of the arrest for the purpose of identifying an automobile found on the parking lot there. Upon his arrival he saw not only his car, but three males, "handcuffed and in police custody, standing near his 'stolen' automobile." This on-the-scene confrontation between the victim and the defendant shortly after the crime was committed was not found to be unduly suggestive or unfair.

█ In the case at bar, the victim was taken from the scene to the police station. Within one-half hour of having escaped her assailant she was confronted by the defendant whom she positively identified as her attacker. The mere fact that this victim positively identified the defendant as her assailant does not render the confrontation at the police station suggestive nor unfair. See *State v. Dodson,* 491 S.W.2d 334, 338 (Mo.1973). On the basis of the evidence before the trial court we conclude that the trial court correctly ruled that the confrontation was neither unconstitutionally suggestive nor conducive to irreparable mistaken identity.

Second, defendant asserts that there was no valid independent basis for the in-court identifications. In support of his claim defendant relies on (1) dark and rainy conditions on the night of the occurrence; (2) inadequate lighting at the scene of the crime; and (3) the questionable descriptions of the witnesses. Defendant argues that the identifications made by the witnesses were simply a reaffirmation of an identification made at an emotionally charged confrontation at the police station.

█ When in-court identification is attacked on the ground that the pretrial identification procedures violated due process, inquiry extends to a determination of whether the procedures were unduly suggestive, and if unduly suggestive, whether there is an independent source of identification. *State v. Hampton,* 509 S.W.2d 139, 140 (Mo.App.1974) and *State v. Parker,* 458 S.W.2d 241 (Mo.1970). Even though pretrial identification procedure may have been unduly suggestive, procedure does not so offend due process as to make subsequent in-court identification inadmissible if the pretrial identification is otherwise reliable. *State v. Hampton,* supra.

█ Various factors are relevant to consider those facts which, despite the out-of-court identification, determine whether the in-court identifications had an independent basis. They include "the prior opportunity to observe the alleged criminal act, the existence of any discrepancy between any pre-lineup description and the defendant's actual description, any identification prior to lineup of another person, the identification by picture of the defendant prior to the lineup, failure to identify the defendant on a prior occasion, and the lapse of time between the alleged act and the lineup identification." *United States v. Wade,* 388 U.S. 218, 241, 87 S.Ct. 1926, 1940, 18 L.Ed.2d 1149 (1967).

In *Hampton,* supra, the defendant contended that the lineup was a suggestive confrontation because he was the only person appearing in it who had a portion of his head shaved. He argued that the witnesses were aware of the fact that one of the robbers had been shot during the robbery, and the witnesses' identifications may have been influenced by his shaved head. The court held that where both witnesses had an ample opportunity to view the defendant during the robbery and both stated that their in-court identification was based upon such independent observation the in-court identifications had a source independent of allegedly suggestive pretrial lineup and confrontation identification.

In *State v. Grimm,* 486 S.W.2d 427 (Mo. 1972), the victims of sodomy attacks were in the presence of their assailants in a coffee house for twenty (20) or thirty (30) minutes, in adequate light, and later subjected to sexual attacks for two or three hours. The court in *Grimm* concluded that such facts demonstrated a clear and convincing independent basis for identification supporting the finding of the trial court.

In the instant case both witnesses testified in detail about their opportunity to observe the appellant, and both witnesses gave a positive in-court identification of the defendant as the attacker. The victim testified that she was first approached by the defendant at the intersection of Page Avenue and Kingshighway Boulevard. She stated that she was forced to accompany the defendant to an alleyway off of Kingshighway and that once there, over a period of approximately two and one-half hours, the defendant tried to have sexual intercourse with her four or five times. The witness clearly stated that she had repeated opportunities to get a clear look at defendant's face by the light of a nearby street lamp and the lights in the alleyway on the Sears' property. Additionally, the witness, when she first talked to the police, described her attacker by stating that he was a black male, weighing about 200 pounds. At that time, she stated that her attacker wore a "natural" and had a beard and a mustache, and she described his clothing by giving the color of her attacker's shirt, pants and coat. And lastly, she positively identified the defendant, in court, as the man who had attempted to rape her.

The truck driver, who gave the victim a ride to the police station following her escape from her attacker positively identified defendant as the man he saw scuffling with the victim on the night in question.

 We hold that under the facts presented the in-court identifications of defendant by the witnesses had a source independent of the pretrial identification procedures so that admission of such identification testimony was proper even if there had been improper pretrial identification procedures.

Judgment affirmed.

WEIER, P. J., and KELLY, J., concur.