

# IN THE MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

| | | |
|---|---|---|
| PATRICK L. HARRIS, | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | WD78102 |
| | ) | |
| STATE OF MISSOURI, | ) | FILED: November 24, 2015 |
| Respondent. | ) | |

**Appeal from the Circuit Court of Cole County**
**The Honorable Patricia S. Joyce, Judge**

**Before Division Four: Alok Ahuja, C.J., and Victor C. Howard and Gary D. Witt, JJ.**

Following a jury trial, Patrick Harris was convicted in the Circuit Court of Cole County of multiple charges arising from an armed robbery in Jefferson City in October 2009. After his conviction and an unsuccessful direct appeal, Harris filed a motion for post-conviction relief under Supreme Court Rule 29.15. His motion alleged, among other things, that his trial counsel was ineffective for not moving to suppress inculpatory statements Harris made immediately after his arrest, while he was injured. The circuit court denied Harris' motion following an evidentiary hearing. Harris appeals. We affirm.

## Factual Background

On January 10, 2011, Harris was convicted by a jury of first-degree assault under § 565.050, RSMo, first-degree robbery under § 569.020, RSMo, armed criminal action under § 571.015, RSMo, and possession of a firearm by a convicted felon under § 571.070, RSMo. He

was sentenced to life, twenty years, ten years, and ten years, respectively, with the sentences ordered to run consecutively.

The charges stemmed from an October 13, 2009 robbery at a law office in Jefferson City. Our opinion in Harris' direct appeal, *State v. Harris*, 364 S.W.3d 790, 791-93 (Mo. App. W.D. 2012), contains a detailed account of the facts of the underlying offenses. For present purposes, the relevant facts are as follows. During the robbery, one of the victims exchanged gunfire with Harris, and both the victim and Harris were struck by bullets. Officers testified at Harris' trial that, following a tip and a trail of blood, they found Harris in an apartment above the law office in the early morning hours of October 14, 2009. Harris was hiding behind a curtain in the apartment's laundry room. Harris had suffered a gunshot wound to his hand; his hand was wrapped in a bloody towel, and duct taped. Sergeant Steve Weaver of the Jefferson City Police Department testified that police "immediately called for an ambulance" after taking Harris into custody.

Sergeant Weaver notified Harris of his *Miranda* rights and Harris indicated that he understood. Sergeant Weaver testified that he then asked Harris about his hand injury. After Harris replied that he had hurt his hand in St. Louis, Sergeant Weaver asked if Harris knew anything about the previous night's robbery and shooting. Harris said that he did not. Sergeant Weaver testified he "told [Harris] I thought he was a liar based on the blood that he had, the blood leading to the apartment, his injuries. And then I told him I thought he was lying to me." Sergeant Weaver described for Harris what Sergeant Weaver believed had transpired. Sergeant Weaver testified that upon hearing this, Harris "dropped his head and said, 'Yeah, it was me.' And then he paused and said, 'Well, I didn't do a robbery. My friend did a robbery.'" Sergeant Weaver again told Harris that he believed Harris was lying. Harris reiterated that his unnamed

2

friend had committed the robbery. Sergeant Weaver again accused Harris of lying, to which Harris responded "Yeah, you're right. I'm the one that did it. I did the robbery, and I shot that guy."

Sergeant Weaver testified that while he spoke to Harris he was aware of "a lot of blood" in or under the towel on Harris' hand. On cross-examination, Sergeant Weaver was asked, "He was in pain, but you talked to him?" Sergeant Weaver responded that Harris "didn't say much about pain" during their conversation. The conversation ended before the ambulance arrived. After being treated at the hospital and signing a written waiver of his *Miranda* rights, Harris again gave a statement implicating himself in the robbery.

Harris' counsel did not file a pretrial motion to suppress Harris' statements, and he did not object to police officers' testimony regarding Harris' statements. The jury convicted Harris of all charged offenses, and we affirmed his convictions in *State v. Harris*, 364 S.W.3d 790.[1]

On July 17, 2012, Harris filed a motion for post-conviction relief under Rule 29.15, alleging that his trial counsel was ineffective. Counsel was appointed to represent Harris. Appointed counsel filed an amended motion, which challenged, among other things, trial counsel's failure to attempt to suppress his confessions. The amended motion contended that Harris' initial statements were inadmissible, because his waiver of his *Miranda* rights was unknowing and involuntary in light of his physical condition at the time. The amended motion argued that Harris' later statements were likewise inadmissible, because the later interrogation was simply a continuation of, and tainted by, the earlier questioning.

---

[1] Although we affirmed Harris' convictions, our opinion modified Harris' sentence for first-degree assault to conform the written judgment (which reflected a 99-year sentence) to the circuit court's oral pronouncement of a life sentence on this count. 364 S.W.3d at 796-97.

The circuit court held an evidentiary hearing on Harris' post-conviction relief motion, at which trial counsel and Harris both testified. Trial counsel testified that he did not file a motion to suppress Harris' statements, because he did not believe such a motion would succeed. Although Harris testified at the evidentiary hearing, he offered no testimony concerning the nature of his hand injury, or concerning his physical or mental condition at the time of his initial interrogation, other than to say that he had suffered a gunshot wound to his hand "[i]n St. Louis during a drive-by [shooting]." The circuit court concluded that "there was no way to keep the statements out of the case[,]" and that there "was absolutely no basis for such a motion [to suppress Harris' statements]." Because counsel could not be deemed ineffective for failing to file a non-meritorious motion, the circuit court rejected Harris' ineffective-assistance claim. Harris appeals.

## Standard of Review

> Appellate review of a motion court's denial of a Rule 29.15 motion for post-conviction relief is limited to a determination of whether its findings of fact and conclusions of law are clearly erroneous. Findings of facts and conclusions of law are clearly erroneous only if, after review of the entire record, we are left with a definite and firm impression that a mistake has been made.

*Prince v. State*, 390 S.W.3d 225, 230 (Mo. App. W.D. 2013) (citations and internal quotation marks omitted).

## Analysis

> To be entitled to post-conviction relief for ineffective assistance of counsel, a movant must demonstrate by a preponderance of the evidence that (1) trial counsel failed to exercise the level of skill and diligence that reasonably competent counsel would exercise in a similar situation and (2) the movant was prejudiced by that failure. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). There exists a strong presumption that counsel's conduct was reasonable and effective. To overcome this presumption, a movant must identify specific acts or omissions of counsel that, in light of all the circumstances, fell outside the wide range of professional competent assistance. Strategic choices made after a thorough investigation of the law and the facts relevant to plausible opinions are virtually unchallengeable.

4

*Dorsey v. State*, 448 S.W.3d 276, 286-87 (Mo. banc 2014) (other citations and internal quotation marks omitted).

"Counsel will not be found to be ineffective for failing to investigate and file a meritless motion to suppress." *Eddy v. State*, 176 S.W.3d 214, 218 (Mo. App. W.D. 2005) (citing *State v. Hunter,* 840 S.W.2d 850, 870 (Mo. banc 1992)). We therefore examine whether, on this record, the motion court clearly erred in concluding that a motion to suppress Harris' statements to police would have been meritless.

Harris contends that his initial statements to police should have been suppressed because he was suffering from a gunshot wound at the time of his initial interrogation, and that due to his injuries and pain he was incapable of knowingly and voluntarily waiving his right against self-incrimination. He argues that his later statements should have been suppressed because the second interrogation was in reality merely a continuation of the first.

In *Miranda v. Arizona,* 384 U.S. 436 (1966), the Supreme Court of the United States determined that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Id.* at 444. Such procedural safeguards include that the arrestee "be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." *Id.* A defendant can waive his privilege against self-incrimination so long as the waiver is "made voluntarily, knowingly and intelligently." *Id.*

> The waiver inquiry has two distinct dimensions: waiver must be voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception, and made with a full awareness of both the

5

nature of the right being abandoned and the consequences of the decision to abandon it.

*Berghuis v. Thompkins*, 560 U.S. 370, 382-83 (2010) (citations and internal quotation marks omitted).

Harris does not dispute that Sergeant Weaver advised him of his *Miranda* rights prior to questioning him. Instead, his claim is that he could not knowingly and voluntarily waive his privilege against self-incrimination given his physical condition at the time of the interrogation. We disagree. The Missouri Supreme Court has stated that "[w]e know of no constitutional prohibition against a seriously wounded person confessing to the commission of a crime." *State v. Granberry*, 484 S.W.2d 295, 300 (Mo. banc 1972). "There is no prohibition against a seriously injured person making a voluntary confession to the commission of a crime . . ., unless there is evidence to indicate that he was suffering severe pain or that he did not fully understand the subject matter of the conversation." *State v. Maynard*, 707 S.W.2d 810, 813-14 (Mo. App. W.D. 1986). To justify suppression of statements on account of his injuries, a defendant "must demonstrate that his injuries were such that his will to resist questioning was overborne." *State v. Rousan*, 961 S.W.2d 831, 846 (Mo. banc 1998) (affirming denial of motion to suppress where "[t]here is no evidence in this case that appellant was suffering severe pain or that he did not fully understand the subject matter of the conversation").[2]

---

[2] *See also*, *e.g.*, *State v. Luster*, 750 S.W.2d 474, 479 (Mo. App. W.D. 1988) ("Although the defendant had been injured and eventually received treatment in the hospital, those facts alone do not proscribe the use of his statement."); *State v. Williams*, 566 S.W.2d 841, 844 (Mo. App. 1978) ("The mere fact that the defendant had been injured prior to his statement does not proscribe the use of such statements."); *State v. Ambus*, 522 S.W.2d 306, 311 (Mo. App. 1975) ("The fact that the defendant was wounded does not preclude a waiver or make the statement involuntary. We know of no constitutional prohibition against a seriously wounded person making a statement."); *State v. Hampton*, 509 S.W.2d 139, 143 (Mo. App 1974) ("Contrary to defendant's claim, the fact that he was in the hospital awaiting treatment when he made the incriminating statements does not preclude the finding that his waiver was voluntary where there is no evidence that his physical condition in any way inhibited his understanding of the *Miranda* rights.").

Harris failed to establish that his injuries were so severe that he was incapable of knowingly and voluntarily waiving his rights. The evidence at trial indicates that, on the morning following the robbery, the police located Harris by following a trail of "blood drops" to the apartment in which he was hiding. Harris' left hand was wrapped in a bloody towel and duct-taped. From the contents of the apartment, it appears that Harris may have used hydrogen peroxide to clean the wound. In addition, his wet clothes were found in the apartment's washing machine, indicating that he had attempted to wash them. Harris had hidden behind a curtain in the laundry room. Once discovered, he was able to respond to officers' command that he crawl out of his hiding place to be handcuffed. The testimony indicates that officers promptly called for an ambulance after taking Harris into custody; there is no suggestion that the officers delayed or denied Harris access to medical care. When interrogated by Sergeant Weaver, Harris indicated that he understood his *Miranda* rights; he then repeatedly denied his involvement in the robbery, and gave Sergeant Weaver a false exculpatory explanation for his injury, before ultimately confessing his responsibility for the crime. The testimony indicates that Harris was taken to the hospital for treatment of the injury to his left hand, and was then interrogated again; the testimony gives no indication, however, as to the nature or length of the treatment Harris received, or that he was hospitalized or prescribed any medications.

Although Harris' Brief contends that he was in "serious pain" at the time Sergeant Weaver questioned him, the only reference to pain in the trial testimony is the following exchange during Sergeant Weaver's cross examination: counsel asked, "He was in pain, but you talked to him?", to which Sergeant Weaver responded that Harris "didn't say much about pain" during their conversation. It is unclear whether this testimony establishes that Harris said *anything* about pain during Sergeant Weaver's interrogation; but even if Harris made some

7

complaint, this limited exchange does not indicate that Harris was suffering from, or complaining of, "serious pain" that overcame his ability to make a knowing and voluntary decision whether to respond to Sergeant Weaver's questioning.

Thus, the evidence at trial indicates that Harris was able to flee from the robbery scene, break into an apartment to conceal himself, clean and dress his wound, attempt to start a load of laundry, hide himself and then emerge when instructed, and attempt to evade responsibility by giving police a false account of the cause of his injury. There is no indication in the trial testimony that Harris was suffering from, or complaining of, serious pain. Nothing in the evidence at trial indicates that Harris' "will to resist questioning was overborne." *Rousan*, 961 S.W.2d at 846. On the contrary, the evidence indicates that Harris was able to function, physically and mentally, to attempt to protect his own interests and avoid criminal responsibility.[3] The testimony at the evidentiary hearing on Harris' post-conviction relief motion added nothing: Harris offered _no_ additional evidence concerning the nature of his injuries, or his physical or mental condition at the time of his arrest, beyond the statement that he had been "shot in the hand" "[i]n St. Louis during a drive-by" (an explanation the jury presumably rejected).

Given the evidence at trial and at the post-conviction evidentiary hearing, Harris' claim is simply this: that his statements should have been suppressed because he had suffered a gunshot wound to his left hand which had not been professionally treated. As explained above, however, the mere fact that Harris had been injured is insufficient to justify the suppression of his

---

[3] This case is clearly unlike the situation confronted by the Supreme Court of the United States in *Mincey v. Arizona*, 437 U.S. 385 (1978). In *Mincey*, "[t]he statements at issue were . . . the result of virtually continuous questioning of a seriously and painfully wounded man on the edge of consciousness," *id.* at 400; at the time of the challenged statements, the defendant "was lying on his back on a hospital bed, encumbered by tubes, needles, and breathing apparatus," was confused and unable to talk, and requested multiple times that the questioning cease. *Id.* at 398-400. In such circumstances it is hardly surprising that the Supreme Court found the defendant's statements to be involuntary and therefore inadmissible.

8

statements. Harris was required to make some further showing that his injury and any consequent pain rendered him incapable of making a free and intelligent decision to waive his rights and confess. He failed to do so.[4] In these circumstances, the motion court did not clearly err in concluding that any motion to suppress would have been meritless, and that trial counsel was not ineffective for failing to file such a meritless suppression motion.

## Conclusion

We affirm the judgment of the circuit court, which denied Harris' motion for post-conviction relief.

_____
Alok Ahuja, Chief Judge

All concur.

---

[4] Harris' post-conviction relief motion contends that trial counsel should have moved to suppress not only his initial statements to Sergeant Weaver, but also the additional inculpatory statements which he made following his receipt of hospital treatment. Harris' only argument for suppression of the post-treatment statements is that the later statements were the product of his initial, unlawful interrogation. Because the trial court did not clearly err in finding that there was no basis to suppress Harris' initial statements, it follows that there was no basis to move to suppress his later statements either.