

# In the Missouri Court of Appeals
# Eastern District

<u>DIVISION FIVE</u>

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | ED104743-01 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court of |
| | ) | St. Francois County |
| v. | ) | 14SF-CR00709-01 |
| | ) | |
| RICHARD D. GRAY, | ) | Honorable Randall Head |
| | ) | |
| Defendant. | ) | Filed:  October 22, 2019 |

## OPINION

Richard D. Gray ("Defendant") appeals the judgment entered upon his conviction of first-degree involuntary manslaughter in violation of Section 565.024 RSMo (Cum. Sup. 2008) and second-degree assault in violation of Section 565.060 RSMo (Cum Supp. 2006).  Defendant asserts multiple points on appeal relating to alleged errors at trial.  Defendant also filed a supplemental point on appeal challenging the trial court's denial of his motion for new trial following an evidentiary hearing to consider newly discovered evidence as mandated by this court upon remand.  We affirm.

## BACKGROUND

On the evening of January 16, 2013, Defendant, Kasey Stevens ("Stevens"), her brother Michael Petty ("Petty"), her boyfriend Robert Radford ("Radford"), and Radford's friend Dale Ingram ("Ingram") spent the evening drinking.  When Radford passed out, Stevens took the keys

to his van so she, Ingram, and Defendant could buy drugs. As they were driving, the van skidded through a curve and rolled over. Some unknown time later, in the early morning of January 17, Missouri Highway Patrol Corporal Andrew Woods ("Corporal Woods") was dispatched to the single-vehicle accident scene. Upon arrival he observed the van upside down with Ingram trapped inside. Defendant and Stevens were unconscious and bleeding outside the van. They were ultimately transported via helicopter to a trauma center in St. Louis County where Stevens died from her injuries. At the scene, Ingram informed Corporal Woods that Defendant was driving and lost control of the van.

Defendant was charged with first-degree involuntary manslaughter and second-degree assault. He was released to the St. Francois County jail after a lengthy stay in a rehabilitation center. Corporal Woods met Defendant at the jail where he gave conflicting reports about whether he was driving. Initially, Defendant told Corporal Woods that Petty was driving the van. He also stated, "It wasn't me. I ain't going to lie to you. I got nothing to hide." However, he later said, "I think maybe I might have drove. I don't know. I might be going nuts." According to Corporal Woods, Defendant seemed incoherent and confused.

At trial, the defense strongly disputed that Defendant was, in fact, driving the van the night of the accident. There was significant testimony presented, including accident reconstructionists for both the State and Defendant, as well as other fact witnesses who testified about potential evidence that Petty was actually driving that night. A jury convicted Defendant of both counts and he was sentenced to fifteen years in prison for each count, to be served concurrently. Defendant appealed his conviction.

Defendant asserted three points in his initial June 9, 2017 brief. He claimed the trial court erred in denying his motion to suppress because blood drawn while he was unconscious at

2

the hospital - absent a warrant - violated his Fourth Amendment rights. Defendant also claimed the trial court erred in denying the motion to suppress statements he made to Trooper Woods while Defendant was in jail following the accident because the State failed to establish Defendant knowingly and intelligently waived his right to remain silent. Finally, Defendant argued the trial court erred in sustaining the State's objection excluding the testimony of Robert Fucetola, M.D. ("Dr. Fucetola") regarding Defendant's general intelligence.

While his appeal was pending, Defendant filed a motion to remand the case to the trial court to consider newly discovered evidence. He alleged that in May 2017, after the time available to file a motion for new trial, he learned of a witness named Jill Johnson who claimed she overheard a conversation in which Petty, Steven's brother, admitted he was driving the van the night of the accident. On October 5, 2017, we granted the motion and remanded the cause to the trial court to conduct a hearing "on whether the newly discovered evidence warrants a new trial."

However, the trial court failed to conduct the mandated hearing by denying Defendant's motion to continue for additional time to produce Johnson. The court then denied his supplemental motion for new trial. Defendant filed a supplemental brief, arguing that the trial court abused its discretion in denying his motion for continuance to allow him to present newly discovered evidence. We granted Defendant's point and reversed the trial court's decision to deny his motion for continuance in contravention to our October 5, 2017 mandate. *State v. Gray*, 2018 WL 5538761.

Upon remand, the trial court heard the testimony of Jill Johnson and denied the motion. Defendant filed a supplemental point on appeal, in addition to the three points initially asserted,

3

challenging the trial court's decision to deny his motion for new trial based on the newly discovered evidence.

## DISCUSSION

### *Standard of Review*

Defendant's initial points one and two on appeal concern the trial court's denial of his motions to suppress and the admission of certain evidence at trial. We review the trial court's ruling on a motion to suppress to determine whether the decision is supported by substantial evidence. *State v. Fortner*, 451 S.W.3d 746, 750-51 (Mo. App. E.D. 2014). We reverse the ruling only if it is clearly erroneous. *Id*. at 751. We consider both the evidence presented at the pre-trial hearing and any additional evidence presented at trial. *Id*. We defer to the factual findings and credibility determinations of the trial court. *Id*.

Moreover, the trial court has broad discretion in its decision to admit or exclude evidence at trial. *State v. Jordan*, 181 S.W.3d 588, 594 (Mo. App. E.D. 2005). The trial court abuses its discretion if the decision is clearly against the logic of the circumstances and so unreasonable or arbitrary as to shock the sense of justice and indicate lack of careful consideration. *Id*.

### *Analysis*

In his first point on appeal, Defendant claims the trial court erred in admitting evidence of the results of his blood test from a warrantless blood draw while he was unconscious at the hospital the night of the accident. Defendant argues the Missouri Implied Consent law does not authorize such warrantless blood draws absent exigent circumstances and the State did not prove any exigency existed.

After Defendant filed his appeal, the United States Supreme Court addressed this issue in *Mitchell v. Wisconsin*, 139 S.Ct. 2525 (2019). The Court noted that while the Fourth

4

Amendment guards the rights of an individual against unreasonable searches, a search without a warrant can be reasonable. *Id.* at 2534. The court specifically stated in the context of an unconscious driver, the need for a blood test is compelling and may leave no time for an officer to seek a warrant. *Id.* at 2535. The Court noted blood alcohol concentration ("BAC") tests are needed to enforce laws that save lives, and because the evidence sought to be obtained for testing naturally dissipates, the testing must be done promptly. *Id.* When a breath test is unavailable, particularly in the context of an unconscious driver, "a blood test becomes essential." *Id.* Thus, the Court held where police have probable cause to believe a suspect committed a drunk-driving offense and an unconscious driver must be taken to a hospital, or similar facility, before a breath test can be administered, police may almost always order a warrantless blood test to measure the driver's BAC without violating his Fourth Amendment rights. *Id.* at 2539.

Here, Defendant was discovered unconscious and bleeding outside the van involved in a single car accident. He was taken to the hospital and his blood was drawn while he remained unconscious. Corporal Woods observed a "very strong odor" of intoxicants on Defendant. Ingram, who was still in the van at the scene, informed Corporal Woods that Defendant was driving and lost control. Ingram also stated Defendant consumed four or five beers in addition to using methamphetamine that evening.

Based upon these circumstances, there was probable cause for Corporal Woods to believe Defendant was driving while intoxicated. Thus, the rationale of *Mitchell* applies, and the warrantless blood test while Defendant was unconscious did not violate his Fourth Amendment rights. *Mitchell*, 139 S.Ct. at 2539. As a result, the trial court did not err in admitting evidence of the blood test taken while Defendant was unconscious. Point one is denied.

5

In his second point, Defendant argues the trial court erred in admitting evidence of his statements to Corporal Andrew Woods three months after the accident because he had significant cognitive impairment from the traumatic brain injury he sustained in the accident, and the State failed to establish Defendant knowingly and intelligently waived his Fifth Amendment right to be free from self-incrimination.

In *Miranda v. Arizona*, 384 U.S. 436, 444 (1966), the United States Supreme Court determined a suspect being arrested was entitled to be warned he has the right to remain silent, that any statement he does make may be used as evidence against him, and that he has the right to an attorney. The privilege against self-incrimination can be waived if such waiver is made voluntarily, knowingly, and intelligently. *Id*.

Defendant contends he did not knowingly and intelligently waive his right to be free from self-incrimination at the time he was questioned by Corporal Woods; therefore, his statements should have been suppressed because of his injuries. However, there is no prohibition against a seriously injured suspect making a voluntary statement or confession unless there is evidence to indicate he did not fully understand the subject matter of the conversation. *Harris v. State*, 475 S.W.3d 227, 231 (Mo. App. W.D. 2015). A defendant must demonstrate his injuries were so significant as to overcome his will to resist questioning in order to justify suppression of statements made during such questioning. *Id*.

During the suppression hearing, Corporal Woods testified he advised Defendant of his *Miranda* rights. Defendant did not subsequently request counsel and he continued to speak freely with Corporal Woods; nor did he refuse to make a statement following his *Miranda* warnings. Corporal Woods testified Defendant seemed confused and incoherent at times during their discussion, making several random statements unrelated to the accident and whether he was

6

driving. However, this does not establish Defendant was injured to the extent his will to resist questioning was overcome. *See Harris*, 475 S.W.3d at 231. Instead, the record reflects that Defendant requested to speak to Corporal Woods about the accident and voluntarily provided Corporal Woods with information about his role in it. Thus, the trial court did not err in denying Defendant's motion to suppress his statements to Corporal Woods. Point two is denied.

In his third point on appeal, Defendant claims the trial court erred in excluding the testimony of Dr. Robert Fucetola regarding Defendant's general intelligence. According to Defendant, this testimony was relevant to the jury's consideration of whether Defendant understood what he was saying and doing when he made certain statements and the weight given to such statements by the jury.

### *Standard of Review*

The trial court has broad discretion to admit or exclude evidence. *State v. Murphy*, 534 S.W.3d 408, 414 (Mo. App. E.D. 2017). We will reverse the court's decision only where there is a clear abuse of that discretion. *Id.* However, to preserve a claim of improperly excluded evidence, the proponent of such evidence must attempt to present the evidence at trial and make an offer of proof when the evidence is excluded. *State v. Hunt*, 451 S.W.3d 251, 263 (Mo. banc 2014). The offer of proof must be sufficiently specific to show what evidence would have been proffered. *Id.*

### *Analysis*

During Dr. Fucetola's testimony at trial, the State objected to counsel's question on direct examination regarding the test results of Defendant's "general intelligence" on the basis of relevance. The court sustained the objection and counsel continued with direct examination without any offer of proof. Thereafter, counsel asked Dr. Fucetola's opinion whether Defendant

could make a voluntary statement following his discharge from the rehabilitation center. The State again objected, and defense counsel made an offer of proof regarding this evidence, but it did not include any reference to the previously excluded testimony concerning Defendant's general intelligence.

Absent an offer of proof specifically regarding Dr. Fucetola's opinion of Defendant's general intelligence, this claim of error is not preserved because we cannot assess the relevance of such testimony. *See Hunt*, 451 S.W.3d at 263. However, pursuant to Missouri Supreme Court Rule 30.20, "plain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or miscarriage of justice has resulted therefrom."

Dr. Fucetola testified at length regarding Defendant's substantial cognitive impairment resulting from the traumatic brain injury he suffered during the accident. He specifically testified his standardized tests showed Defendant was "significantly impaired," scoring only in the second percentile. Dr. Fucetola stated at the time of testing, Defendant needed 24-hour supervision and was unable to care for himself. This constituted more detailed evidence of Defendant's mental capability from which the jury could assess the voluntariness of any of Defendant's statements than simply testimony concerning Defendant's general intelligence.

Defendant further argues the court's instruction to the jury patterned after MAI-CR 3d 310.06, which allows the jury to consider whether statements made by a defendant were freely and voluntarily made, necessarily rendered Dr. Fucetola's testimony regarding Defendant's general intelligence relevant. However, as discussed, the jury heard detailed testimony concerning Defendant's cognitive function, and the instruction merely directed the jury to

8

consider such evidence in determining whether Defendant's statements were freely and voluntarily made and the weight to give such statements.

Thus, the trial court did not err, plainly or otherwise, in sustaining the State's objection to Dr. Fucetola's testimony regarding Defendant's general intelligence. Point three on appeal is denied.

In his supplemental point on appeal, Defendant claims the trial court erred in denying his motion for new trial based on newly discovered evidence because Johnson's testimony regarding the conversation she overheard in which Petty confessed to driving the van the night of the accident was credible, material, and not merely impeachment evidence. Defendant argues this newly discovered evidence raises serious doubt that Defendant was driving the van.

### *Standard of Review*

Pursuant to Rule 29.11, the court may grant a new trial "upon good cause shown." However, new trials based on newly discovered evidence are disfavored, and the trial court has significant discretion in determining whether a new trial is necessary. *State v. Stewart*, 313 S.W.3d 661, 665 (Mo. banc 2010). Therefore, we will affirm the trial court's decision regarding whether to grant a new trial unless we find the court abused its discretion. *Id*. The trial court abuses its discretion if its decision is so clearly against the logic of the circumstances and so arbitrary and unreasonable to shock the sense of justice and indicate a lack of careful consideration. *Id*.

### *Analysis*

In order to obtain a new trial on the basis of newly discovered evidence, a defendant must show: (1) the newly discovered evidence came to his knowledge after the trial; (2) the defendant's lack of knowledge was not due to lack of diligence on his part; (3) the newly

9

discovered evidence is so material it is likely to produce a different result at a new trial; and (4) the evidence is not merely cumulative or used to impeach a witness's credibility. *State v. Shelton*, 529 S.W.3d 853, 867-68 (Mo. App. E.D. 2017). Assuming, *arguendo*, Defendant established the first, second, and fourth elements, he cannot show the evidence was so material as to likely produce a different result at trial.

To show the evidence would likely produce a different result, Defendant must show the evidence is both credible and reasonably sufficient to raise substantial doubt in the mind of a reasonable person. *State v. Manley*, 414 S.W.3d 561, 566 (Mo. App. E.D. 2013). On remand, the trial court heard testimony from Jill Johnson who knew Defendant, Stevens, Petty, and Stevens' mother Glenda "[a]ll my life." She testified that she did not live in the area at the time of the accident. However, soon after her return, she was in Glenda Stevens' living room and overheard Petty say something similar to, "[w]onder what my mom would think if she knew I was driving in the vehicle that my sister got killed in?" Johnson stated one other individual, identified only as "Vinnie," was in the room when Petty made the statement. According to Johnson, Petty was intoxicated and had come "staggering" into the living room prior to making the statement.

Johnson's sworn affidavit was also presented to the trial court in which she stated she heard Petty tell Vinnie he was driving the van. According to the affidavit, Johnson heard Petty say Stevens gave her boyfriend Xanax to knock him out to steal his van keys, and he drove the van. However, during her testimony on remand, Johnson said she did not recall who told her this information.

The supplemental record does not contain any evidence corroborating Johnson's affidavit or testimony. In fact, her testimony on remand was equivocal regarding the source of her

information that Petty was driving the van. Moreover, even if her testimony regarding Petty's drunken statement had been credible, the physical evidence presented at trial actually contradicted her claim. The State presented detailed testimony from Lieutenant Cameron Mitchell Heath, the supervisor of the major crash investigation team and an experienced accident reconstructionist. His investigation not only corroborated Defendant's statement that he was driving, but also concluded there were only three occupants in the van: Defendant, Stevens, and Ingram. In addition to the physical evidence, Ingram testified Defendant was driving the van.

At trial, Defendant presented conflicting evidence concerning whether he - or Petty - was driving the night in question. This was a significant factor in our decision to remand the cause and require the trial court to hear Johnson's testimony. However, once Johnson testified it was clear the newly discovered evidence did not rebut the physical evidence. Thus, her testimony is not sufficient to raise a substantial doubt in the mind of a reasonable person and was not so material as to produce a different result at trial. Therefore, the trial court did not err in denying Defendant's motion for new trial. Defendant's supplemental point on appeal is denied.

## CONCLUSION

The judgment of the trial court is affirmed.

_____

Lisa P. Page, Judge

Colleen Dolan, C.J. and Roy L. Richter, J., concur.

11