

# In the Missouri Court of Appeals
# Eastern District

## DIVISION THREE

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED102714 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of St. Francois County |
| vs. | ) | 10SF-CR02059 |
| | ) | |
| JOSEPH TROY WILSON, SR., | ) | Honorable Sidney T. Pearson III |
| | ) | |
| Appellant. | ) | Filed:  May 10, 2016 |

Joseph Troy Wilson, Sr. ("Defendant") appeals the judgment entered upon a jury verdict

convicting him of three counts of first-degree statutory sodomy (Counts II, III, and IV) and one

count of first-degree child molestation (Count V) involving his minor children.  The trial court's

written judgment[1] reflected a 999-year-sentence for Counts III and IV, while the court's oral

pronouncement of sentence reflected a sentence of life imprisonment for those two counts.  We

affirm in part and modify in part.

## I.      BACKGROUND

As reflected in the fourth amended substitute information, Defendant was ultimately

charged with five sex offenses involving his children A.W., S.V., and R.W., and the offenses

were alleged to have occurred at times when each child was less than fourteen years old.  Count

I, a charge of first-degree statutory rape, alleged Defendant had sexual intercourse with A.W.

---

[1] All references to the trial court's written judgment refer to the court's amended judgment entered on February 28, 2015.

Count II, a charge of first-degree statutory sodomy, alleged Defendant had deviate sexual intercourse with S.V. by engaging in an act involving Defendant's genitals and S.V.'s anus. Count III, a charge of first-degree statutory sodomy, alleged Defendant acted in concert with another and caused or encouraged S.V. to have deviate intercourse with a man nicknamed "Shorty" by having S.V. place his mouth or tongue on "Shorty's" genitals. Count IV, a charge of first-degree statutory sodomy, alleged Defendant had deviate sexual intercourse with R.W. by engaging in an act involving Defendant's genitals and R.W.'s mouth or tongue. And Count V, a charge of first-degree child molestation, alleged Defendant subjected A.W. to sexual conduct by having her touch Defendant's penis through his clothing.

A.W. and S.V. disclosed the sexual abuse to their foster mother, to a clinical social worker, and to a forensic interviewer at the Children's Advocacy Center ("CAC"). During Defendant's jury trial on the charges at issue in this case, the State presented testimony from A.W., S.V., R.W., the foster mother, the social worker, the forensic interviewer, and others regarding the sexual abuse. Witnesses for the defense included Defendant, who denied the allegations of sexual abuse, and Dr. Ann Duncan-Hively, an expert witness and clinical psychologist who had reviewed A.W.'s and S.V.'s CAC interviews.

The jury acquitted Defendant of Count I (the first-degree statutory rape charge involving A.W.), but found him guilty of Counts II-V (the three first-degree statutory sodomy charges and first-degree child molestation charge). The jury recommended a sentence of life imprisonment for Counts II, III, and IV and fifteen years of imprisonment for Count V. During the court's oral pronouncement of sentence, the trial court sentenced Defendant in accordance with the jury's recommendation, stating Defendant was sentenced to life imprisonment for Counts II, III, and IV and fifteen years of imprisonment for Count V, with all of the sentences to run consecutively. The trial court subsequently entered a written judgment in accordance with the jury's verdict

2

convicting Defendant of Counts II-V.  The written judgment reflected a sentence of life imprisonment for Count II, 999 years of imprisonment for Counts III and IV, and fifteen years of imprisonment for Count V, with all of the sentences to run consecutively.  Defendant appeals.

## II.  DISCUSSION

Defendant raises four points on appeal alleging, (1) the trial court committed reversible error in making an evidentiary ruling during a portion of defense counsel's direct examination of defense witness Dr. Duncan-Hively; (2) there was insufficient evidence to support Defendant's first-degree statutory sodomy conviction under Count II; (3) the trial court erred in failing to intervene sua sponte during a portion of the prosecutor's cross-examination of Defendant; and (4) the portion of the trial court's written judgment reflecting his sentence on Counts III and IV is erroneous because it does not reflect the court's oral pronouncement of the sentence on those counts.

### A.  The Trial Court's Evidentiary Ruling During a Portion of Defense Counsel's Direct-Examination of Defense Witness Dr. Duncan-Hively

In Defendant's first point on appeal, he claims the trial court committed reversible error in making an evidentiary ruling during a portion of defense counsel's direct examination of defense witness Dr. Duncan-Hively.

It is within a trial court's broad discretion to admit or exclude evidence at trial and an evidentiary ruling is reviewed for an abuse of discretion.  *State v. Hood*, 451 S.W.3d 758, 765 (Mo. App. E.D. 2014).  A trial court abuses its discretion when its decision "is clearly against the logic of the circumstances and is so unreasonable as to indicate a lack of careful consideration." *Id.*  We will only reverse an evidentiary error if prejudice is demonstrated, i.e., if there is a reasonable probability the trial court's alleged error affected the outcome of the trial.  *Id.*

When a trial court makes a ruling which effectively limits the examination of a witness or prohibits a witness from testifying altogether, courts consider whether an offer of proof was

3

made and whether the offer of proof demonstrates prejudice resulted from the excluded testimony. *See State v. Bracken*, 333 S.W.3d 48, 54-55 (Mo. App. E.D. 2010); *State v. Sloan*, 912 S.W.2d 592, 595-97, 597 nn. 2-5 (Mo. App. E.D. 1995). No prejudice results from the exclusion of a witness's testimony regarding counts defendant was ultimately acquitted on, because the testimony would not have further impeached the victim's credibility in that "the jury already chose not to find [the victim's] testimony credible to convict [defendant] on th[o]se counts." *State v. Miller*, 372 S.W.3d 455, 472-73 (Mo. banc 2012).

Dr. Duncan-Hively was an expert witness and clinical psychologist who had reviewed A.W.'s and S.V.'s CAC interviews. The following occurred during defense counsel's direct-examination of Dr. Duncan-Hively:

| Defense counsel: | Now let's talk about again the CAC interviews. When you reviewed the CAC interviews what were you looking for? |
|---|---|
| Dr. Duncan-Hively: | *There are three primary things you look for in an interview. The first one is leading questions, and a leading question is where you ask it in such a way that the child answers yes or no. So you have taken the power away from the child's description and put the power in the hands of the interviewer. One of the leading questions that was asked of [A.W.] was 'did your dad rape you?' That's a straightforward, leading question.* |
| Prosecutor: | Judge, may we approach? |
| The court: | You may. |

The following proceedings were then held at the bench, out of the presence of the jury:

| Prosecutor: | Your Honor, he just stepped over the line . . .. The generalized testimony in talking about interviews and the manner of presenting the interviews is – |
| The court: | The jury has already heard this. I'm not going to listen to her testimony of what was said during the interview. They heard the tape. |
| Defense counsel: | Right. I won't go – |

| | |
|---|---|
| The court: | I'm not going to let her change what was said during that tape. They heard it. They will remember it. |
| Defense counsel: | Right. |
| The court: | They will remember it accurately. |
| Defense counsel: | I will clean it up, Judge. |
| The court: | Please do. |

The following proceedings were then held in open court:

| | |
|---|---|
| Defense counsel: | Dr. Duncan, what is your purpose here today? |
| Dr. Duncan-Hively: | To try to help the understanding of the manner in which the interview was – interviews were collected. |
| Defense counsel: | Are we talking about protocols and procedures? |
| Dr. Duncan-Hively: | We are. |
| Defense counsel: | Is it your job to tell whether the children were telling the truth? |
| Dr. Duncan-Hively: | Absolutely not. That's not my job. |
| Defense counsel: | All right. In your opinion to a degree of reasonable scientific certainty, were there leading questions used in this case? |
| Dr. Duncan-Hively: | *It is my opinion beyond a reasonable degree of psychological certainty that the leading questions that were used in this case were used throughout in all of the interviews.* |

(emphasis added). The prosecutor did not object to the prior testimony, and defense counsel continued to question Dr. Duncan-Hively.

In this case, Defendant claims the trial court erred in ruling in favor of the State when the prosecutor approached the bench after Dr. Duncan-Hively testified, "One of the leading questions that was asked of [A.W.] was 'did your dad rape you?' That's a straightforward, leading question." Defendant claims the trial court's ruling indicating the court would not allow

5

Dr. Duncan-Hively to testify as to what A.W. said during the interview was prejudicial because it prevented Defendant from showing the defects and leading questions in the interviewing process and precluded him from raising a defense that the answers were in response to suggestive procedures. However, the record reflects otherwise.

As reflected in Dr. Duncan-Hively's testimony emphasized above, she was allowed to testify, without objection, that: (1) leading questions are one of the primary things to look for in an interview, (2) "a leading question is where you ask it in such a way that the child answers yes or no," and "you have taken the power away from the child's description and put the power in the hands of the interviewer"; (3) A.W. was allegedly asked a specific leading question during her interview regarding whether Defendant raped her; and (4) it was Dr. Duncan-Hively's opinion "beyond a reasonable degree of psychological certainty that the leading questions that were used in this case were used throughout in all of the interviews." In other words, Dr. Duncan-Hively was permitted during her testimony, without objection, to explain to the jury the nature of leading questions, to opine that leading questions like the one allegedly asked to A.W. were used throughout all of the interviews, and to effectively critique the interviews in this case. In addition, there was no offer of proof given by defense counsel as to any other specific testimony he wished to elicit from Dr. Duncan-Hively, and Defendant was ultimately acquitted of the statutory rape charge involving A.W.

Under these circumstances, we find Defendant has failed to demonstrate any prejudice resulted from the trial court's evidentiary ruling, i.e., Defendant has failed to demonstrate there is a reasonable probability the trial court's alleged error affected the outcome of the trial. *See Miller*, 372 S.W.3d at 472-73; *Hood*, 451 S.W.3d at 765; *see also Bracken*, 333 S.W.3d at 54 (finding it was not possible to evaluate the prejudicial nature of a witness's excluded testimony where there were insufficient details given during the offer of proof); *Cf. Sloan*, 912 S.W.2d at

6

595, 596-97, 597 nn. 2-5 (finding the trial court erred in not allowing a witness to testify as an expert based on the witness's proposed testimony set forth in defendant's offer of proof). Therefore, we hold the trial court did not commit reversible error in making the evidentiary ruling during the direct examination of Dr. Duncan-Hively.[2] *See Hood*, 451 S.W.3d at 765. Point one is denied.

## B.    Sufficiency of the Evidence

In Defendant's second point on appeal, he asserts there is insufficient evidence to support his first-degree statutory sodomy conviction under Count II.

Appellate review of a challenge to the sufficiency of the evidence supporting a criminal conviction is limited to a determination of "whether the [S]tate has introduced sufficient evidence from which a reasonable juror could have found each element of the crime beyond a reasonable doubt." *State v. Hosier*, 454 S.W.3d 883, 898 (Mo. banc 2015). In making that determination, all evidence and inferences favorable to the State are accepted as true, and all contrary evidence and inferences are disregarded. *State v. Nash*, 339 S.W.3d 500, 509 (Mo. banc 2011). In addition, great deference is given to the trier of fact, and an appellate court will not weigh the evidence anew. *Id*.

Pursuant to section 566.062.1 RSMo 2000,[3] "[a] person commits the crime of statutory sodomy in the first degree if he has deviate sexual intercourse with another person who is less than fourteen years old." "Deviate sexual intercourse" is defined in relevant part as "any act involving the genitals of one person and the hand, mouth, tongue, or anus of another person . . .

---

[2] Our holding should not be read to indicate that we find the trial court erred in making its evidentiary ruling at issue in this point on appeal. It is unnecessary for us to discuss this particular issue here, because our ruling that Defendant has failed to demonstrate any prejudice resulted from the trial court's evidentiary ruling is dispositive.
[3] Section 566.062 was subsequently amended effective June 5, 2006, but those amendments are not applicable to Count II because the crime was alleged to have occurred between May 19, 2003 and May 19, 2005.

done for the purpose of arousing or gratifying the sexual desire of any person." Section

566.010(1) RSMo Supp. 2003.[4]

Defendant's first-degree statutory sodomy conviction under Count II was based upon

Defendant having deviate sexual intercourse with S.V. by engaging in an act involving

Defendant's genitals and S.V.'s anus. Defendant maintains the State failed to prove he had

deviate sexual intercourse with S.V. because there was insufficient evidence to establish

Defendant's penis made contact with S.V.'s "anus" as opposed to his "butt."

> 'Anus' is defined as 'the posterior opening of the alimentary canal.' 'Butt' is defined as 'buttocks.' A 'buttock' is defined as 'either of the rounded parts at the back of the hips; either half of the rump.' . . .. Evidence that a defendant touched a victim's 'butt' or 'buttocks' is insufficient to show the defendant touched the victim's 'anus.' However, Missouri courts have held that a jury could infer contact with the victim's 'anus' from testimony that the defendant touched the victim's 'butt,' 'behind,' or 'bottom,' when specific evidence supports such an inference.

*State v. Ray*, 407 S.W.3d 162, 167 (Mo. App. E.D. 2013) (internal quotations and citations

omitted).

In this case, S.V. was between three and five years old at the time of the act alleged in

Count II. Although S.V. never specifically stated Defendant's penis touched his "anus," there

was sufficient testimonial evidence presented at trial to support such an inference.

At trial, S.V. testified that while Defendant's pants were pulled down, Defendant's penis

made skin-to-skin contact with S.V.'s butt, and Defendant "tried to put his penis in [S.V.'s] butt"

but the penis did not go inside his butt. In addition, S.V.'s clinical social worker, Julie Downs,

testified at trial that when S.V. was eleven-years-old, he told her Defendant "placed his penis in

his anal area." Viewing this testimony and accepting all inferences therefrom in the light most

favorable to the State, which our standard of review requires us to do, a reasonable juror could

---

[4] Section 566.010(1) RSMo Supp. 2003 incorporates amendments through 2002. The statute was subsequently amended effective June 5, 2006, but those amendments are not applicable to Count II for the same reasons stated in footnote 3.

infer that Defendant's penis made contact with S.V.'s anus but little to no penetration occurred. Moreover, the testimony from S.V. and Downs was sufficient to establish Defendant engaged in an act involving his genitals and S.V.'s anus. Point two is denied.

**C.     The Trial Court's Failure to Intervene Sua Sponte During a Portion of the Prosecutor's Cross-Examination of Defendant**

In Defendant's third point on appeal, he claims the trial court erred in failing to intervene sua sponte during a portion of the prosecutor's cross-examination of Defendant. Defendant concedes his claim is not preserved for review because defense counsel did not object to the portion of the prosecutor's cross-examination at issue in this point and because he did not raise the claim in his motion for new trial. *See, e.g., State v. Shaffer*, 251 S.W.3d 356, 357 (Mo. App. S.D. 2008).

Pursuant to Rule 30.20,[5] our Court may review Defendant's unpreserved claim for plain error. *State v. McKay*, 411 S.W.3d 295, 304 (Mo. App. E.D. 2013). Under this standard of review, we will only grant Defendant relief if we find an error occurred and the error affected Defendant's rights so substantially that a manifest injustice or miscarriage of justice resulted. *Id*.; *State v. Brown*, 996 S.W.2d 719, 732 (Mo. App. W.D. 1999). Plain errors are those which are evident, obvious, and clear, and our Court determines whether such errors exist based on the circumstances of each case. *McKay*, 411 S.W.3d at 304-05. "Plain error is rarely found in a trial court's failure to take action sua sponte." *Brown*, 996 S.W.2d at 732 (emphasis omitted). Defendant has the burden of demonstrating a manifest injustice or miscarriage of justice resulted from the trial court's alleged error. *McKay*, 411 S.W.3d at 304.

In this case, the following occurred during the prosecutor's cross-examination of Defendant:

---

[5] All references to Rules are to Missouri Supreme Court Rules of Criminal Procedure (2015).

| | |
|---|---|
| Prosecutor: | Mr. Wilson, you've testified that you had these four children, you moved between all of these different households, you didn't really know the people that you were moving to. Was it because you were just so poor that you couldn't figure out how to feed your kids? |
| Defendant: | At times, yes. |
| Prosecutor: | What kind of car did you drive? |
| Defendant: | '82 Chevrolet. |
| Prosecutor: | And that's the car that you lived in for a few days when you couldn't find somewhere else to go? |
| Defendant: | Yes. |
| Prosecutor: | Did you have a large bill at the Budget Inn? |
| Defendant: | I can't recall. |
| Prosecutor: | *Would it surprise you to learn that the Budget Inn said that you owed them more than $2,000.00 for the time that you lived there?* |
| Defendant: | I can't recall. |

(emphasis added).

Defendant maintains the trial court plainly erred in failing to intervene sua sponte when the prosecutor asked Defendant if it would surprise him to learn the Budget Inn said he owed them more than $2,000.00 for the time he lived there because the question "was an implied hearsay assertion of theft, an uncharged offense" and a "hearsay accusation of . . . dishonesty." We disagree. Assuming *arguendo* that the prosecutor's question was implied hearsay, "[i]t is well-established law in Missouri that hearsay admitted without objection may properly be considered as evidence by the trier of fact." *State v. Perdue*, 317 S.W.3d 645, 653 (Mo. App. S.D. 2010) (quoting *State v. Goodwin*, 43 S.W.3d 805, 818 (Mo. banc 2001)). In addition, "hearsay evidence offered without objection is not plain error." *Perdue*, 317 S.W.3d at 653 (quotations omitted). Moreover, we find no manifest injustice or miscarriage of justice resulted

10

from the question about an unpaid hotel bill where the State presented testimony from A.W., S.V., R.W., the foster mother, the social worker, the forensic interviewer, and others regarding Defendant's sexual abuse. Based on the foregoing, we hold the trial court did not plainly err in failing to intervene sua sponte during the prosecutor's cross-examination of Defendant. Point three is denied.

**D. The Sentence Reflected in the Written Judgment for Counts III and IV Versus the Court's Oral Pronouncement of Sentence for Those Two Counts**

In Defendant's fourth and final point on appeal, he asserts the portion of the written judgment reflecting a 999-year-sentence for Counts III and IV is erroneous because it does not reflect the court's oral pronouncement of a sentence of life imprisonment for those two counts and there is a material difference between the two sentences. We agree, and the State concedes this error.

"If there is a material difference between the written judgment and the oral pronouncement of sentence, the oral pronouncement controls." *State v. Harvey*, 348 S.W.3d 169, 172 (Mo. App. E.D. 2011). As recently held by our Court, a sentence to a specific term of more than seventy-five years of imprisonment and a sentence of life imprisonment are materially different because, among other reasons, they have a different effect in determining a defendant's parole eligibility dates. *State v. Clark*, 2016 WL 1579001 at *4 (Mo. App. E.D.); *see also State v. Harris*, 364 S.W.3d 790, 796-97 (Mo. App. W.D. 2012).

It is not necessary for our Court to remand a case where there is material difference between the written judgment and the oral pronouncement of sentence if we can properly rectify the sentence ourselves by correcting and modifying the judgment in accordance with Rule 30.23. *Harris*, 364 S.W.3d at 796-97; *Harvey*, 348 S.W.3d at 172. Pursuant to Rule 30.23, an appellate court may correct a trial court's judgment which is erroneous "as to the time or place of imprisonment." *Harris*, 364 S.W.3d at 797 (quoting Rule 30.23). Moreover, if there is such an

11

error in the written judgment, an appellate court "shall sentence such person to the proper place of confinement, and for the correct length of time from and after the date of the original sentence." *Harris*, 364 S.W.3d at 797 (quoting Rule 30.23).

Based on the foregoing, there is a material difference between the written judgment reflecting a 999-year-sentence for Counts III and IV and the oral pronouncement of a sentence of life imprisonment on those two counts. Because the oral pronouncement controls, we correct and modify the judgment in this case to reflect a sentence of life imprisonment for Counts III and IV, with the sentences to run consecutively with each other and with the sentences for Counts II and V. *See Harris*, 364 S.W.3d at 796-97 (correcting and modifying a judgment to reflect the oral pronouncement of a sentence of life imprisonment when the written judgment reflected a sentence of ninety-nine years); *Harvey*, 348 S.W.3d at 172 (correcting and modifying a judgment to reflect the oral pronouncement of a sentence of fifteen years when the written judgment reflected a sentence of thirty years). Point four is granted.

### III.    CONCLUSION

The trial court's judgment is affirmed as modified.

_____
ROBERT M. CLAYTON III, Presiding Judge

Lawrence E. Mooney, J., and
James M. Dowd, J., concur.

12